## LUSTHAUS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8697.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 7, 1944.

Decided April 11, 1945.

Paul E. Hutchinson, of Pittsburgh, Pa. (W. A. Seifert, William Wallace Booth, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., and Joseph W. Ray, Jr., of Uniontown, Pa., on the brief), for petitioner.

Meyer Rothwacks, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and FAKE, District Judge.

McLAUGHLIN, Circuit Judge.

The question presented is whether the asserted partnership of the taxpayer and his wife should be so recognized for federal income tax purposes. The year involved is 1940.

It is conceded for the petitioner that the facts as found by the Tax Court are substantially correct. Briefly these are: For several years prior to 1940, the petitioner owned and operated a retail furniture business, consisting of two stores, both in Uniontown, Pennsylvania. In 1939 petitioner conferred several times with an accountant and an attorney and it was decided that he would "sell" to his wife a one-half interest in his business and make her an equal partner as of January 1, 1940. The net worth of the business, excluding goodwill and after a withdrawal of $20,000 by petitioner, was determined to be $210,000. Petitioner decided to make a gift to his wife of $50,000 so that she would have it as part of the purchase money for the one-half interest. After some delay, in June, 1940, the petitioner executed a bill of sale to his wife for a one-half undivided interest in his furniture business. The stated

consideration was $105,253.81, representing one-half of the estimated value of the business on December 31, 1939. Mrs. Lusthaus, at or about the same time, executed a partnership agreement. A few days later the petitioner borrowed $25,000 from a bank. He gave his wife a check for $50,-000, which sum was made up from the proceeds of the loan and from money previously withdrawn from the business. Then Mrs. Lusthaus gave petitioner her check for $50,253.81 together with eleven promissory notes totalling $55,000, as the purchase price. At that time Mrs. Lusthaus owned her own home valued at $25,000 and at least $20,000 of securities. On July 31, 1940, a certificate authorizing the petitioner and his wife to carry on business under the fictitious name of "Household Furniture Co." was issued by the Commonwealth of Pennsylvania. A gift tax return for 1940 was filed by the petitioner and this reported a gift to his wife of $50,000 on January 1, 1940.

Thereafter the business proceeded in much the same fashion as prior to the partnership transaction. Petitioner, as always, managed the business. Such management was specifically provided for in the partnership agreement. The wife who had assisted in the store, or stores, prior to the partnership arrangement, continued that practice. She received no salary at any time. Prior to 1940 Mr. and Mrs. Lusthaus had maintained a joint bank account. In 1940 they opened separate accounts. There was a third account for the Household Furniture Co. In 1940 the petitioner withdrew $4,604.76 from the business and the wife withdrew $59.61. In 1941 the petitioner withdrew $19,198.69 and the wife $16,317.-86. The profits of the business were credited equally at the close of each year. Mrs. Lusthaus has paid three of the promissory notes. In 1940 a partnership return was filed in the name of "Household Furniture Co." showing a net profit of $80,280.20. Petitioner and his wife each reported one-half of that amount less partnership contributions, etc., in their individual returns for 1940.

On these facts the Tax Court found that the petitioner is taxable on all of the profits from the said furniture business in 1940. That Court said: "The evidence here discloses another of those superficial arrangements whereby a husband undertakes to make his wife a partner in his business for the obvious, if not the sole, purpose of reducing his income taxes."

On behalf of the petitioner it is asserted that the Tax Court erred as a matter of law in so concluding from the facts. It is urged that the facts show a legitimate, operating partnership business under general law and under the Partnership Act of the Commonwealth of Pennsylvania. 59 P.S. § 1 et seq. Even assuming that the arrangement more or less complied with the formalities of the Pennsylvania law, that would not necessarily be binding for tax purposes. The cases hold that the status must be genuine, with a change in economic interest. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. 406; Griffiths v. Commissioner of Internal Revenue, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319. It is well settled that taxation is a practical matter in which substance controls the form. Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520.

The one real problem is whether there was substantial evidence to support the Tax Court's conclusion. If there was, then we are not at liberty to re-weigh the evidence or to choose between conflicting inferences. Commissioner of Internal Revenue v. Scottish American Investment Co., Limited, 65 S.Ct. 169; Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, rehearing denied 321 U.S. 231, 64 S.Ct. 495, 88 L.Ed. 691.

It could be inferred from the evidence that there was no real contribution of capital by Mrs. Lusthaus. The circumstances surrounding the $50,000 incident, with the money immediately returned to the petitioner, could be construed as indicating that the latter had not divested himself irrevocably of the subject matter of the gift. Mrs. Lusthaus' services to the partnership were virtually the same as she had rendered in the stores prior to 1940. The testimony could be taken to indicate that the conduct of the parties with reference to the furniture company did not change. In Earp v. Jones, 10 Cir., 131 F.2d 292, cer-

tiorari denied, 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1136, the Court said at page 294:

"One may not merely change the form but do business in substantially the same way. An essentially new and different economic unit must be formed."

Other evidence not specifically set out in the findings of fact tends to justify the Tax Court's decision. For example, the bank with which the company had its account was not given the right to accept Mrs. Lusthaus as a partner of the concern with authority to draw checks until 1943. The petitioner continued to file social security tax returns as owner of the business through 1940 and up until June of 1941.

As the Supreme Court says in its Scottish American opinion, supra [65 S.Ct. 172], "Our examination of the record convinces us that the factual inferences and conclusions of the Tax Court are supported by substantial evidence * * *." We cannot say here that the Tax Court's conclusion to the effect that the alleged partnership was not bona fide, is unreasonable. The decision of the Tax Court is, therefore, affirmed.

FAKE, District Judge (dissenting).

This is not the first time a partnership between husband and wife has been dealt with by the Federal Courts as bearing on the payment of income taxes. If, however, there is any one sphere wherein the axiom should be followed that every case must be decided upon its own peculiar facts, it is in this complicated and elusive sphere.

A careful study of the cases cited in the briefs, together with some independent research, fails to disclose any other case wherein the pertinent evidentiary factors of the instant case are all met with. In short, nothing has been found on all fours with the problem here. While it is true that certain basic principles are spelled out in the cases and the rule requiring substantial evidence has become more or less fixed, much is yet to be desired before the lower courts can function on the subject with certainty. So also counsel, learned in the law, are placed in the same dilemma in advising their clients on the subject.

The uncontradicted evidence in this case discloses that the petitioner and his wife had given considerable thought to the question of a business partnership between them and endeavored to embark upon such a relationship. To this end petitioner retained counsel familiar with the law and also a public accountant skilled in the pertinent tax problems and the necessary actuarial factors to be considered. As a result of conferences between the petitioner and his wife and in the light of the advice of the accountant and counsel, the following steps were taken to the end that a partnership might be established:

(1) The value of petitioner's business was ascertained from a statement made up from the books of the business and fixed at $230,507.62, as of January 1, 1940.

(2) On January 12, 1940, petitioner withdrew $20,000 in cash from the business, thus reducing the value of the assets to $210,507.62.

(3) On June 4, 1940, a partnership agreement was entered into between petitioner and his wife, taking effect retroactively on January 1, 1940, wherein the value of the assets is fixed at $210,507.62, because of the withdrawal of $20,000 as above mentioned.

(4) On the same day, to wit, June 4, 1940, the petitioner executed and delivered to his wife a bill of sale transferring to her an undivided one-half interest of, in and to the assets of the business in consideration of the sum of $105,253.81.

(5) Petitioner made his wife a present of $50,000, evidenced by his check, to be applied by her to the purchase price above mentioned and paid a gift tax thereon.

(6) The wife gave petitioner her personal check for $50,253.81 to be applied on the purchase price, and executed and delivered to petitioner a series of eleven promissory notes each in the sum of $5,000 payable in one to eleven years, respectively, thus accounting for the full purchase price, and these notes have been paid as they matured.

(7) The business is that of buying and selling household furniture, carried on in two stores, one known as Household Furniture Company and the other as Furniture Outlet Store, both in Uniontown, Pennsylvania.

(8) Certificates to transact business as partners under these assumed or fictitious names were duly filed in the Office of the Secretary of the Commonwealth and in the Office of the Prothonotary of Fayette County, pursuant to Pennsylvania law.

(9) As of January 1, 1940, partnership books were opened and thereafter the profits of the partnership were equally divided

between the partners on the books of the firm, and each partner thereafter made withdrawals therefrom, making deposits in their respective individual accounts.

(10) The wife had a separate estate consisting of a dwelling valued at from $25,000 to $30,000 and securities valued at from $20,000 to $25,000 before and at the time she entered into the partnership.

(11) Before the wife entered into the partnership she had for years helped out in the stores and after the partnership she functioned in like manner.

(12) The bank with which the partnership had its account was not authorized to accept checks of the wife as a partner until 1943. .

(13) Social Security tax returns were filed after the partnership until 1941, reciting petitioner as owner.

(14) The income tax return for the year 1940 was filed as a partnership return.

(15) The partners instituted law suits in the partnership name.

It is upon the foregoing undisputed cold facts that the Tax Court says: "The evidence here discloses another of those superficial arrangements whereby a husband undertakes to make his wife a partner in his business for the obvious, if not the sole, purpose of reducing his income taxes."

This conclusion constitutes an omnibus generality. It indicates no specific separate evaluation of the fifteen factors involved, and bases the conclusion entirely on inference or motive rather than on the law involved. I do not understand that in all instances where one changes his financial status with relation to his wife for the purpose of reducing his income taxes, he is to have his consummated plans set at naught. The better approach would seem to be one directed to an endeavor to ascertain the legal and equitable effect of the fifteen factors with which we are here concerned.

The opinion of the Tax Court says: "Finally, the partnership emerged from the metamorphosis clothed in the outer garment of legal respectability, but inwardly perhaps a little uneasy over the flimsiness of its under garment of income tax alleviation." On reading this in the solitude of my chambers, surrounded by row on row of volumes dealing with the hard cold logical realities of life, it is indeed refreshing to find myself entering a mystic realm and dreaming in unison with the poet Ovid in his Metamorphoses and imagining that dear, sweet thing, Daphne, changed into a laurel while fleeing from Apollo. But I must snap out of it and reenter that mundane realm wherein a great jurist once said: "The power to tax is the power to destroy." We have here, clearly discernible, an American taxpayer, true to form, apparently inspired by his constitutional rights in the light of early American history. Surely we must respect the sacredness of his rights.

The opinion of the Tax Court holds: "The wife acquired no separate interest of her own by turning back to petitioner the $50,000 which he had given her conditionally and for that specific purpose." This, in my opinion, is a mistake of law. The uncontradicted evidence discloses that she received, under the law of Pennsylvania, a one-half interest in assets of her husband in which she theretofore had no such interest; not only is this evidenced by the articles of partnership, but also by a bill of sale, and still further pointed by the filing of certificates to transact business under assumed partnership names. While it is true that the $50,000 gift was tied to the specific use to which it was to be put, it is noted on analysis that this amounts to the same thing as a gift of an undivided interest in the assets of the business to the extent of $50,000. The assets had been valued at a sum certain. A gift tax had to be paid on that part of the consideration which was represented by the gift; hence, the check is for a sum certain to make a full disclosure and to keep the record straight for gift tax purposes. I am quite unable to find any evidence in the case from which a different conclusion can be arrived at.

The Tax Court holds: "The formalities of executing the partnership agreement and registering the business with the Pennsylvania authorities as a partnership did not change petitioner's economic interests in the business." This appears to me to be a conclusion of law in direct conflict with the statutory and case law of Pennsylvania. It is arrived at arbitrarily and wholly without evidence upon which such a conclusion may be drawn. Moreover, it seems to me it is certain under the Pennsylvania law that when petitioner's wife entered the partnership, she brought with her additional capital beyond that mentioned in the partnership agreement. Her separate estate as mentioned in the tenth fact above would

be liable for the firm debts on a marshalling of the assets in the event of insolvency. This in effect strengthened the position of the petitioner and weakened that of his wife.

Under the law of Pennsylvania the petitioner and his wife as well have certainly changed their economic interest in the business. The articles of partnership and the bill of sale, emphatically and without ambiguity, accomplish very material changes. Both petitioner and his wife were solvent at the time; there is no fraud, actual or constructive; petitioner has come into court with clean hands and has made a full and complete disclosure. Therefore the articles of partnership, the bill of sale and the certificates mean exactly what they say. I must admit however that petitioner sought, among other things, a legal status which would result in a reduction of his taxes. But this he had a perfect right to do.

Thus far emphasis has been placed on the Pennsylvania law. This emphasis is occasioned by Poe v. Seaborn, 282 U.S. 101, at page 110, 51 S.Ct. 58, 75 L.Ed. 239, wherein it is said: "What, then, is the law of Washington as to ownership of community property and of community income, including the earnings of the husband's and wife's labor? The answer is found in the statutes of the State, and the decisions interpreting them."

The authority of the state in an analogous field is dealt with in Erie R. Co. v. Tompkins, 304 U.S. 64, at page 78, 58 S. Ct. 817, at page 822, 82 L.Ed. 1188, 114 A. L.R. 1487, wherein it is said: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." In this connection, it is my view, that until Congress legislates to define partnership for income tax purposes, we must of necessity resort to the state law for the purpose of ascertaining the existence of that relationship. It has its roots in the common law of the state alone, and Pennsylvania has enacted a Uniform Partnership Act in furtherance of it.

In Poe v. Seaborn, supra, an income tax problem was also before the court and it was held there that: "The District Court was right in holding that the husband and wife were entitled to file separate returns, each treating one-half of the community income as his or her respective income

* * *." In 1939, the Supreme Court said in Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, at page 82, 60 S.Ct. 424, at page 426, 84 L.Ed. 585: "* * * in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property or income sought to be reached by the statute."

That there has been no falling away by the Supreme Court from the position taken in Poe v. Seaborn, supra, is apparent as late as 1942. In the case of Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 144, 87 L.Ed. 154, Mr. Justice Reed says: "When Congress fixes a tax on the possibility of * * * the distribution of income, the 'necessary implication,' we think, is that the possibility is to be determined by the state law."

On the same day the case now before us was argued, we heard the case of Lum v. Commissioner, 147 F.2d 356, 357. In that case we considered assignments in New Jersey made by a husband to a wife, which resulted in a tax saving by the husband. There we followed the rule in Poe v. Seaborn, supra, without directly citing it, and said: "The assignments are governed by the law of that state." It is my thought that we must follow the same rule here.

As to the substantial evidence rule which now obtains generally in administrative tribunals where the basic law so permits, and is therefore applied in this case, it is noted that a definition is provided in Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126. There Mr. Chief Justice Hughes, speaking for the Court, said: "We agree that the statute, in providing that 'the findings of the Board as to the facts, if supported by evidence, shall be conclusive', * * * means supported by substantial evidence. * * * Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." This is tied in by the Supreme Court in Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239, 246, 88 L.Ed. 248, as follows: "* * * all that we have said of the finality of administrative determination in other fields is applicable to determinations of the Tax Court." Again, in Commissioner of Internal Revenue v. Scottish American Inv. Co., 323 U.S. 119, 124, 65 S.Ct. 169, Mr. Justice Murphy,

speaking for a unanimous court, said: "* * * when the Tax Court's factual inferences and conclusions are determinative of compliance with statutory requirements, the appellate courts are limited to a determination of whether they have *any substantial basis in the evidence.*" (Emphasis added.)

A painstaking reading of the record in this case fails to disclose to my mind any evidence whatever, much less substantial evidence as above defined, to sustain the conclusion that the petitioner received that income which the law of Pennsylvania vested in his wife. If *earned* income plays a part, it appears that the capital the wife put in was stored up labor and functioned as such in addition to her personal services. The facts set forth in (12) and (13) hereof furnish excellent examples of what Mr. Chief Justice Hughes had in mind when he referred to scintilla evidence as being insufficient to constitute substantial evidence, as quoted above. This in no way conflicts with Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747, 749, 88 L.Ed. 931, wherein it is said: "* * * the District Court was not warranted in setting aside such an order because the court would weigh or appraise the evidence differently." Nor is it in conflict with Commissioner of Internal Revenue v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169. In identifying scintilla evidence no weighing process is involved since now by decision, the judicial stilliards cannot be adjusted to the weighing of the infinitesimal. It is now merely a matter of identification and this court is still free to identify it and call it by its right name.

In recent years an enormous corpus juris has arisen in what is termed the field of Administrative Law. In the administrative process the right to trial by jury is denied, the rules of evidence based on logic and centuries of experience in Anglo Saxon jurisprudence are all but ignored, and in appeals, consideration of the facts de novo is prohibited. Thus we have ushered in the continental system in a vast field. The late greatly lamented Lord Chief Justice Hewart of England being concerned with such thoughts took time from the bench to write an illuminating book on the sub-

ject. The title of his book sums up the whole matter as "The New Despotism." Cosmopolitan Book Corp. New York 1929. Yet, in the face of this tremendous foreign onslaught, the courts in equity still function serenely on appeals in the light of the evidence before them with full power to consider the facts de novo, and so also in non jury cases at law. Thus it is seen that in the sphere of administrative law the rights of American citizens, involving their personal liberty and their private property, are being at times manhandled without logic and without heed to the spirit of Anglo Saxon tradition. Unless the appellate courts intelligently and courageously identify scintilla evidence and cast it out when they do find it, the Bill of Rights, with its reservations in the States, becomes a mockery to all lovers of liberty. If in the future, perchance, the citizenry of America finds itself in the throes of tyranny, it will not be a satisfactory answer by the guardians of liberty, the courts, to say then, that the "situation did not warrant a great expenditure of appellate court energy on unraveling *conflicting factual inferences*" as is said in Commissioner of Internal Revenue v. Scottish American Co., supra.

There is a branch of the law of evidence to be considered which has not as yet been stricken down. The Tax Court has found as an ultimate fact that the petitioner theoretically is in receipt of an income, which on the uncontradicted evidence he never did receive. This is arrived at of course by the injection of inferences. The vice of this is that we find inferences founded on inferences. In dealing with this subject, Wigmore on Evidence, 3rd Edition, Sec. 41, approves New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948, 955, wherein it is said: "* * * the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the *probability* of the ultimate fact may be based thereon." (Emphasis added.) See also, Whealton v. United States, 3 Cir., 113 F.2d 710, in this Circuit, and United States v. Ross, 92 U.S. 281, 23 L.Ed. 707.

For the reasons aforesaid I would reverse the decision of the Tax Court.