# COMMISSIONER OF INTERNAL REVENUE *v.*
# TOWER.

No. 317. Argued January 10, 11, 1946.—Decided February 25, 1946.

282

██ 

*Arnold Raum* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss* and *John F. Costelloe.*

*Oscar E. Waer* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Commissioner of Internal Revenue determined that respondent's wife had in her income tax returns for 1940 and 1941 reported as her earnings income that actually had been earned by her husband but had not been reported in his returns. A deficiency assessment was consequently levied against the respondent by the Commissioner. The particular earnings involved were a portion of net income attributed to a partnership, to which, according to its records, 90 per cent of the capital had been contributed by respondent and his wife; of this, 51 per cent had been contributed by the respondent and 39 per cent by his wife. If, as respondent asserts, the circumstances surrounding the formation and operation of this partnership were such as to bring it within the meaning of §§ 181 and 182 of Title 26 of the United States Code, then the respondent and his wife are liable only for their respective individual share of the business' income. These sections provide that partners are liable for taxes on partnership income only in their "individual capacity" and that each partner shall report "his distributive share of the ordinary net income . . . of the partnership . . ." But § 11 of Title 26 of the United States Code levies a tax on the "net income of every individual," and the "net income" is required to be computed on the basis of "gross income" as defined in § 22 (a), which broadly includes

all earnings of any individual from "any source whatever." And we have held that the dominant purpose of all sections of the revenue laws, including these, is "the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." *Helvering* v. *Horst*, 311 U. S. 112, 119. The basic question in deciding whether the Commissioner's deficiency assessment was proper, is: Was the income attributed to the wife as a partner income from a partnership for which she alone was liable in her "individual capacity," as provided by 26 U. S. C. §§ 181 and 182, or did the husband, despite the claimed partnership, actually create the right to receive and enjoy the benefit of the income, so as to make it taxable to him under §§ 11 and 22 (a)?

The respondent asked the Tax Court to review and redetermine the Commissioner's deficiency assessment, insisting that the income in question was not the respondent's but his wife's share in a partnership. The Commissioner urged in the Tax Court that the wife had contributed neither services nor capital to the partnership and that her alleged membership in the partnership was a sham. Respondent admitted that she had not contributed her services, but contended that she had made a contribution of capital as shown by the amount attributed to her on the partnership books and that she was a bona fide partner. Her alleged contribution consisted of assets which the husband claimed to have given to her three days before the formation of the partnership.

The Tax Court concluded that the respondent had never executed a complete gift of the assets which his wife later purportedly contributed to the partnership; that after the partnership was formed respondent continued to manage and control the business as he had done for many years before; that his economic relation to the portion of the partnership income which was attributed to his wife was such that it continued to be available to be used for the

same purposes as before, including ordinary family purposes; that the effect of the whole partnership arrangement, so far as it involved respondent and his wife, was a mere reallocation of respondent's business income within the family group; and that the dissolution of the corporation and the subsequent formation of the partnership fulfilled no business purpose other than a reduction of the husband's income tax. The Tax Court concluded that this family partnership income was in fact earned by the husband; that there was no real partnership between petitioner and his wife for purposes of carrying on a business enterprise; that the wife received a portion of the income "only by reason of her marital relationship," and held that the entire income was, therefore, taxable to the respondent under 26 U. S. C. § 22 (a). 3 T. C. 396. The Circuit Court of Appeals for the Sixth Circuit reversed. 148 F. 2d 388. The Circuit Court of Appeals for the Third Circuit sustained a holding by the Tax Court, based on facts in all material respects similar to the ones in this case, that all the income from a husband-wife partnership was taxable income of the husband under 26 U. S. C. § 22 (a). *Lusthaus* v. *Commissioner,* 149 F. 2d 232. Other circuit courts of appeals have also sustained similar holdings by the Tax Court.[1] As is indicated by numerous Tax Court decisions, attempts to escape surtaxes by dividing one earned income into two or more through the device of family partnerships have recently created an acute problem.[2] Because of the various views expressed as to controlling legal principles in the decisions discussing such arrangements, we granted certiorari both in this and the *Lusthaus* case, *post,* p. 293.

---

[1] *Earp* v. *Jones,* 131 F. 2d 292 (C. C. A. 10th); *Mead* v. *Commissioner,* 131 F. 2d 323 (C. C. A. 5th); *Argo* v. *Commissioner,* 150 F. 2d 67 (C. C. A. 5th); *Lorenz* v. *Commissioner,* 148 F. 2d 527 (C. C. A. 6th).

[2] See cases collected in Paul, Partnerships in Tax Avoidance, 13 Geo. Wash. L. Rev. 121.

A statement of some of the pertinent facts shown by the record and on which the Tax Court based its conclusion will cast some light on the problem. Broadly speaking, these facts follow a general pattern found in many of the "family partnership" cases. The business here involved, R. J. Tower Iron Works, is located in Greenville, Michigan and has manufactured and sold sawmill machinery and wood and metal stampings. Respondent's participation in the business dates back twenty-eight years. He has managed and controlled the company since the death of his father in 1927. During the tax years in question the business had forty to sixty employees on its pay roll. From 1933 to 1937 the business was operated as a corporation. The respondent was the president of the corporation and owned 445 out of the 500 shares outstanding,[3] his wife was vice president and owned five shares, and one Mr. Amidon was the secretary, owning twenty-five shares. These three also constituted the Board of Directors, and while Tower managed the corporate affairs, Amidon acted as bookkeeper. Mrs. Tower performed no business services.

In 1937 substantial profits pointed to increased taxes. Respondent's attorney and his tax accountant advised him that dissolution of the corporation and formation of a partnership with his wife as a principal partner would result in tax savings and eliminate the necessity of filing various corporate returns. The suggested change was put into effect. August 25, 1937, respondent transferred 190 shares of the corporation's stock to his wife on the condition that she place the corporate assets represented by these shares into the new partnership. Respondent, treating the stock transfer to his wife as a gift valued at $57,000.00, later paid a gift tax of $213.44. Three days

---

[3] For about six months immediately following incorporation the respondent owned only 425 shares.

after the stock transfer the corporation was liquidated, a limited partnership was formed and a certificate of partnership was duly filed for record as required by Michigan law. According to the books, the value of the donated stock became the wife's contribution to the partnership. The formation of the partnership did not in any way alter the conduct of the business, except that both Amidon and Tower ceased to draw salaries. By an agreement made shortly thereafter, a readjustment was made in the amount of profits each partner was to receive, under which Amidon's share became the equivalent of, if not more than, the amount of the salary he had previously drawn. Under the partnership agreement the respondent continued to have the controlling voice in the business, as to purchases, sales, salaries, the time of distribution of income, and all other essentials. Respondent's wife, as a limited partner, was prohibited from participation in the conduct of the business. So far as appears, the part of her purported share of the partnership business she actually expended was used to buy what a husband usually buys for his wife such as clothes and things for the family or to carry on activities ordinarily of interest to the family as a group.

We are of the opinion that the foregoing facts were sufficient to support the Tax Court's finding that the wife was not a partner in the business.[4] A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses.[5] When the existence of

---

[4] Since the Commissioner had determined that the wife was not really a partner, the burden rested upon the respondent to produce sufficient evidence to convince the Tax Court that the Commissioner's determination was wrong. *Welch* v. *Helvering,* 290 U. S. 111; *Commissioner* v. *Heininger,* 320 U. S. 467, 475.

[5] *Ward* v. *Thompson,* 22 How. 330, 333, 334; *Meehan* v. *Valentine,* 145 U. S. 611, 618.

an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions." *Drennen* v. *London Assurance Co.*, 113 U. S. 51, 56; *Cox* v. *Hickman*, 8 H. L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.[6] Here the Tax Court, acting pursuant to its authority in connection with the enforcement of federal laws, has found from testimony before it that respondent and his wife did not intend to carry on business as a partnership. This finding of fact, since supported by evidence, is final. *Commissioner* v. *Heininger*, 320 U. S. 467, 475; *Dobson* v. *Commissioner*, 320 U. S. 489. The decision of the Tax Court was therefore correct unless, as respondent contends, the Tax Court erroneously disregarded or improperly applied certain legal principles.

Respondent contends that the partnership arrangement here in question would have been valid under Michigan law and argues that the Tax Court should consequently have held it valid for tax purposes also. But the Tax Court in making a final authoritative finding on the question whether this was a real partnership is not governed by how Michigan law might treat the same circumstances for purposes of state law. Thus, Michigan could and might decide that the stock-transfer here was sufficient under state law to pass title to the wife, so that in the

---

[6] What would be the effect for tax purposes should taxpayers after holding themselves out as a partnership later challenge the existence of the partnership, is a question not here presented. See *Higgins* v. *Smith*, 308 U. S. 473, 477.

event of her death it would pass to whatever members of her family would be entitled to receive it under Michigan's law of descent and distribution. But Michigan cannot, by its decisions and laws governing questions over which it has final say, also decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax levied against earned income. The contention was rejected in *Lucas* v. *Earl*, 281 U. S. 111. There husband and wife made an agreement for joint ownership of the husband's future income. Assuming that the husband's future earnings were under California law considered as partly owned by the wife, this Court refused to accept the State's concept of the effect of the agreement which would have reduced the federal tax on income actually earned by the husband. And in *Helvering* v. *Clifford*, 309 U. S. 331, 334–335, we held that the purpose of 26 U. S. C. § 22 (a) to tax all income against the person who controlled its distribution could not be frustrated by family group arrangements, even though the distribution arrangements were valid for state law purposes. The statutes of Congress designed to tax income actually earned because of the capital and efforts of each individual member of a joint enterprise are not to be frustrated by state laws which for state purposes prescribe the relations of the members to each other and to outsiders. Cf. *Burk-Waggoner Assn.* v. *Hopkins,* 269 U. S. 110, 114.

Respondent contends that the Tax Court's holding that he is taxable for the profits from the partnership is contrary to a principle long recognized by this Court that "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." *Gregory* v. *Helvering,* 293 U. S. 465, 469. We do not reject that principle. It would clearly apply, for example, in a situation where a member of a partnership,

in order to keep from paying future taxes on partnership profits and in order to get into a lower income tax bracket, sells his interest to a stranger, relinquishing all control of the business. But the situation is different where the taxpayer draws a paper purporting to sell his partnership interest even to a stranger, though actually he continues to control the business to the extent he had before the "sale" and channels the income to his wife. Then a showing that the arrangement was made for the express purpose of reducing taxes simply lends further support to the inference that the husband still controls the income from his partnership interest, that no partnership really exists and that earnings are really his and are therefore taxable to him and not to his wife. The arrangement we are here considering was of the type where proof of a motive to reduce income taxes simply lent further strength to the inference drawn by the Tax Court that the wife was not really a partner. See Paul, Selected Studies in Federal Taxation, 2d series, pp. 293–300. To rule otherwise would mean ordering the Tax Court to shut its eyes to the realities of tax avoidance schemes.

Respondent urges further that the Tax Court erroneously concluded that the gift was ineffective for tax purposes because it was conditional and therefore incomplete. The Government defends the Tax Court's conclusion. We do not find it necessary to decide this issue. The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. *Lucas* v. *Earl, supra.*[7] The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot

---

[7] Under some circumstances income has been held taxable to a person even when he does not own or control it. *United States* v. *Joliet & Chicago R. Co.,* 315 U. S. 44, 46.

be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. See *Commissioner* v. *Court Holding Co.*, 324 U. S. 331, 334. Of course, the question of legal ownership of the capital purportedly contributed by a wife will frequently throw light on the broader question of whether an alleged partnership is real or pretended. But here the Tax Court's findings were supported by a sufficient number of other factors in the transaction, so that we need not decide whether its holding as to the completeness of the gift was correct. Cf. *Helvering* v. *Hallock*, 309 U. S. 106, 117, 118; *Burnet* v. *Wells*, 289 U. S. 670, 677.

There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife.[8] A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws.

It is the command of the taxpayer over the income which is the concern of the tax laws. *Harrison* v. *Schaffner*, 312 U. S. 579, 581, 582. And income earned by one

---

[8] See e. g. *Croft* v. *Commissioner*, [1944 P–H T. C. Mem. Dec. ¶ 44,330] T. C. No. 1432, decided October 11, 1944.

person is taxable as his, if given to another for the donor's satisfaction. *Helvering* v. *Horst,* 311 U. S. 112, 119. It is for this reason, among others, that we said in *Helvering* v. *Clifford, supra,* 335, that transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny. For if under circumstances such as those now before us, the end result of the creation of a husband-wife partnership, though valid under state laws, is that income produced by the husband's efforts continues to be used for the same business and family purposes as before the partnership, failure to tax it as the husband's income would frustrate the purpose of 26 U. S. C. § 22 (a). By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided.

Judged by the actual result achieved, the Tax Court was justified in finding that the partnership here brought about no real change in the economic relation of the husband and his wife to the income in question. Before the partnership the husband managed, controlled, and did a good deal of the work involved in running the business, and he had funds at his disposal which he either used in the business or expended for family purposes. The wife did not contribute her services to the business and received money from her husband for her own and family expenses. After the partnership was formed the husband continued to control and manage the business exactly as he had before. The wife again took no part in the management or operation of the business. If it be said that as a limited partner she could not share in the management without becoming a general partner the result is the same. No capital not available for use in the business before was brought into the business as a result of the formation of the partnership. And the wife drew on income which the partnership books attributed to her only for purposes of buying and paying for the type of things she had bought

for herself, home and family before the partnership was formed. Consequently the result of the partnership was a mere paper reallocation of income among the family members. The actualities of their relation to the income did not change. There was, thus, more than ample evidence to support the Tax Court's finding that no genuine union for partnership business purposes was ever intended and that the husband earned the income. Whether the evidence would have supported a different finding by the Tax Court is a question not here presented.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE REED dissent for the reasons stated in their dissenting opinion in *Lusthaus* v. *Commissioner, post,* p. 297.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, concurring.

I agree with the result and with the Court's view that the evidence was amply sufficient to sustain the Tax Court's findings and conclusions in this case and in *Lusthaus* v. *Commissioner, post,* p. 293. Candor forces me to add, however, that in my judgment the decisions' effect is to rule that in situations of this character the formation of a limited partnership under state law between husband and wife, with the latter as the limited partner, following immediately upon the husband's donation to the wife of a share in the assets of the business previously and afterwards conducted by him and conditioned upon her leaving the assets in the business, as a matter of federal tax law does not accomplish the formation of a partnership sufficient to relieve the husband of tax liability for the income derived after the transfer from use in the business of the share thus donated to the wife. In other words, I think that as a matter of law the taxpayers in these cases were

liable for the taxes assessed against them, including the deficiency assessments; and, therefore, in my opinion the Tax Court is not free in these or substantially similar circumstances to draw either the contrary conclusion or opposing ones. While it is not strictly necessary to express this opinion in these cases in view of the Tax Court's consistent conclusions of liability, it is inconceivable to me that the two cases, consistently with the federal tax law, could be decided the other way or with different outcomes on the facts presented. Being of this opinion, I consider the failure to state it could only tend to perpetuate a source of possible confusion for the future.