## LUSTHAUS v. COMMISSIONER OF INTERNAL REVENUE.

No. 263. Argued January 10, 1946.—Decided February 25, 1946.

*Paul E. Hutchinson* argued the cause for petitioner. With him on the brief were *W. A. Seifert, William Wallace Booth* and *Norman D. Keller.*

*Arnold Raum* argued the cause for respondent. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss* and *John F. Costelloe.*

*Joseph B. Brennan* filed a brief, as *amicus curiae,* urging reversal.

Mr. Justice Black delivered the opinion of the Court.

The question in this case is the same as in *Commissioner* v. *Tower, ante,* p. 280. Here, too, the Commissioner made a deficiency assessment against the husband, petitioner, for purported partnership earnings reported in his wife's return for 1940 and not reported by the petitioner. The Commissioner's action was based on a determination, made after an investigation, that for income tax purposes no partnership existed between the petitioner and his wife. The following are the controlling facts: Petitioner has operated a furniture business since 1918 and since 1933 he has conducted a retail furniture business at two stores located in Uniontown, Pennsylvania. His wife helped out at the stores whenever she was needed without receiving compensation. In 1939 the petitioner found himself confronted with the prospect of large profits and correspondingly large income taxes. This caused him concern and he called in his accountant and attorney. Together they worked out a plan for the supposed husband-wife partnership here involved. The wife had little to do with the whole transaction, and testified when asked about the details that "on the advice of counsel I did what he told me to do." In accordance with the plan the petitioner executed a bill of sale to his wife by which he purported to sell her an undivided half interest in the business for $105,253.81. At the same time the wife executed a partnership agreement under which she undertook to share profits and losses with her husband. The wife paid for her undivided half interest in the following way. Petitioner borrowed $25,000 from a bank and gave his wife a check for $50,000 drawn against the amount borrowed and further funds which he had withdrawn from the business and deposited with the bank for that purpose. The wife then gave petitioner her check for $50,253.81 and the petitioner repaid the $25,000 to the bank. Petitioner's wife also gave him eleven notes in the amount of $5,000 each, which

according to an understanding were to be paid from the profits to be ascribed to the wife under the partnership agreement.[1] Petitioner reported in a 1940 gift tax return that he had made a gift of $50,000 to his wife. Pennsylvania issued petitioner and his wife a certificate authorizing them to carry on the business as a partnership. When the partnership was formed petitioner's wife owned her home, valued at twenty-five to thirty thousand dollars and securities worth up to twenty-five thousand dollars.

After the partnership was formed the wife continued to help out in the stores whenever she was needed just as she had always done. But petitioner retained full control of the management of the business. His wife was not permitted to draw checks on the business bank account. During the taxable year here involved the husband filed social security tax returns as owner of the business. Neither partner could sell or assign the interest ascribed by the partnership agreement without the other's written consent. Though, at the close of each year the profits of the business were credited on the books to petitioner and his wife equally, no withdrawals were to be made under the partnership agreement unless both partners agreed. The husband drew no salary. During 1940, which is the tax year here involved, the business net profits were in excess

---

[1] The Tax Court found as follows on this phase:

"He [the husband] would make her a 'gift' of a part of the purchase price and take her promissory notes for the balance. She could pay off the notes from her share of her profits of the business."

A part of the testimony supporting this finding was given by the husband as follows:

"Q. And what were the terms of that oral agreement?

"A. Just as I stated, that she [the wife] would pay me $50,000 in cash and the balance to be paid in notes.

"Q. Payable yearly?

"A. Payable yearly in notes.

"Q. In the amount of $5,000 each for 11 years?

"A. Yes.

"Q. Where was she to get the amount to be paid off yearly?

"A. From the profits of the business."

of $80,000, from which the respondent withdrew about $4,500 and his wife withdrew only $59.61. The following year they withdrew approximately $16,000 and $19,900 respectively, the wife's withdrawal being used largely to pay back some of the $5,000 notes given as part of her alleged contribution to the partnership capital. On this evidence the Tax Court found that the wife acquired no separate interest in the partnership by turning back to her husband the $50,000 which he had given her conditioned upon her turning it back to him; and that the partnership arrangements were merely superficial, and did not result in changing the husband's economic interest in the business. It concluded that while the partnership was "clothed in the outer garment of legal respectability" its existence could not be recognized for income tax purposes. 3 T. C. 540. The circuit court of appeals affirmed. 149 F. 2d 232. The petitioner challenges the Tax Court's finding that the wife was not a genuine partner on the ground that the evidence did not support it. We hold that it did.

For the reasons set out in our opinion in *Commissioner* v. *Tower, ante,* p. 280, the decision of the circuit court of appeals is affirmed.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE REED, dissenting.

As the Court considers, and as we do, the question in this case is the same as that in *Commissioner* v. *Tower, ante,* p. 280, and as the Court relies to support its conclusion upon the reasons set out in the *Tower* opinion, we shall state the grounds for our dissent in this case rather than the *Tower* case. We choose this certiorari for our explanation because the issue stands out more boldly in the light of the facts before and findings of the Tax Court.

A. L. Lusthaus, as an individual proprietor, had operated a furniture business in Uniontown, Pennsylvania,

for a number of years. In 1939 a realization of existing and prospective federal income tax burdens caused him to cast about for a legal means of lessening the tax. Such method of tax avoidance has not heretofore been considered illegal; and, apropos of this rule, this Court says today in the *Tower* opinion, "We do not reject that principle." See *Gregory* v. *Helvering,* 293 U. S. 465, 469, and cases cited; *Bullen* v. *Wisconsin,* 240 U. S. 625, 630–31.

The statement in the Court's opinion adequately covers the facts. But it should not be inferred from the Court's statement that the notes given were "according to an understanding . . . to be paid from the profits to be ascribed to the wife under the partnership agreement," that payment of the notes was so limited. The notes were unconditional promises to pay. The payment of them from profits was only a hope.

It is essential, too, we think, to note that in these partnership cases the tax doctrine of *Lucas* v. *Earl,* 281 U. S. 111, 115, as to the attribution of income fruit to a different tree from that on which it grew is inapplicable. Here, so far as the income is attributable to the property given, the gift cannot be taken as a gift of income before it was earned or payable, as in *Lucas* v. *Earl,* 281 U. S. 111; *Helvering* v. *Horst,* 311 U. S. 112; *Helvering* v. *Eubank,* 311 U. S. 122, where the income was held taxable to the donor. It was a gift of property which thereafter produced income which was taxable to the donee, as in *Blair* v. *Commissioner,* 300 U. S. 5; cf. *Helvering* v. *Horst, supra,* 119.

From first to last, the record shows a controversy as to whether the business is a valid partnership under the tax laws. The issue never has been whether Mr. Lusthaus failed to return his personal earnings for taxation. There was no effort on the part of the Commissioner to tax him upon a part or all of the partnership earnings as personal compensation which he had earned individually but as-

signed to the partnership for collection or which he had earned individually but caused to be paid to a fictitious partnership. While the Tax Court pointed out that the income resulted in part from petitioner's managerial ability, it also recognized that the capital contributed to the earnings. 3 T. C. at 543. The Tax Court thought that the wife acquired "no separate interest of her own by turning back to petitioner the $50,000" which had been given her conditionally and for that specific purpose. Why it thought the wife did not become an owner in the partnership business, the Tax Court does not explain. The Court's opinion does not turn upon any issue which is connected with the value of Mr. Lusthaus' services and we mention it only for the purpose of focusing attention upon what seems to us the Court's error. If the case was in the posture of a tax claim against Mr. Lusthaus based upon his failure to account for income actually earned by him but paid to his wife, an entirely different issue would be presented.

Since the questions of taxability in this case turn on the wife's bona fide ownership of a share in the partnership, we cannot say that federal law is controlling. Even if it were, we are pointed to no federal law of partnership which precludes the wife's becoming a partner with her husband and making her contribution to capital from money or property given to her by her husband, as well as from any other source.[1]

---

[1] Of course, federal tax provisions are not subject to state law. *United States* v. *Pelzer*, 312 U. S. 399, 402–3. As rights under partnership arrangements are so essentially local, Congress by selecting the receipt of income as the taxable incident may have intended to leave the determination of its character as partnership or individual to state law. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." *Morgan* v. *Commissioner*, 309 U. S. 78, 80; *Heiner* v. *Mellon*, 304

The Court's opinion does not hold that income of husband and wife must be taxed as one. Congress has refused to do this although urged to do so.[2] It does not hold that a wife may not be a partner of her husband under some circumstances. It is said she may be "If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things . . . 26 U. S. C. §§ 181, 182." *Commissioner* v. *Tower, ante,* p. 290. But as we read the Court's opinion, it decides that a wife may not become a partner of her husband for federal income tax purposes, if the husband gives to her, directly or indirectly, the capital to finance her part of the partnership investment unless she also substantially participates in the management of the business or otherwise performs vital additional services. This conclusion we think is erroneous. There is no provision or principle of the Internal Revenue laws which prevents a husband from making a gift of property to his wife, even though his motive is to reduce his taxes, or which requires the income thereafter to be taxed to the husband if the gift is genuine and not pretended and he has retained no power to deprive the wife of the property or its income.

We have pointed out that the amount of earnings to be allocated to petitioner's managerial abilities is not in issue.

---

U. S. 271, 279. See *Blair* v. *Commissioner,* 300 U. S. 5, 9; *Crooks* v. *Harrelson,* 282 U. S. 55; *Uterhart* v. *United States,* 240 U. S. 598, 603.

In *Lucas* v. *Earl,* 281 U. S. 111, the validity of the contract to transfer sums earned was not significant to the inquiry as to who earned the compensation.

[2] Revenue Bill of 1941, H. R. 5417, as introduced, 77th Cong., 1st Sess., § 111; H. Rep. No. 1040, 77th Cong., 1st Sess., p. 10; 87 Cong. Rec. 6731–32. See Mandatory Joint Returns, Joint Committee on Internal Revenue Taxation, U. S. Gov. Printing Office, 1941. It is an old problem. Statement, Secy. of Treas., Tax Avoidance, 1933, Ways & Means Committee.

There is no question but that the gift of $50,000 was complete, either in itself or joined with the subsequent transfer of a half interest in the partnership assets by payment of that $50,000 plus the additional cash and notes. On termination of the partnership, half of the assets would go to her. On her death, her interest in the partnership would go to her heirs or legatees. The value of her individual property—$45,000 to $55,000—would increase the financial strength of the partnership as it would become subject to claims against the partnership. Uniform Partnership Act (Penna.), Title 59, § 37, Purdon's Penna. Stat.; cf. *Aiton* v. *Slater,* 298 Mich. 469, 474, 299 N. W. 149. Her husband paid his federal gift tax on the $50,000. The fact that the partnership "brought about no real change in the economic relation of the husband and his wife to the income in question" cannot affect taxability any more in the present than in any other marital situation where individual incomes exist within the intimate family circle. When a stockholder in a corporation gives stock to his wife, the family's gross income remains the same. It is only surtaxes which are reduced.

Congress taxes partnership income to the partners distributively.[3] It has defined partnership to the extent

---

[3] 26 U. S. C. § 182. "Tax of partners. In computing the net income of each partner, he shall include, whether or not distribution is made to him—

"(a) As part of his gains and losses from sales or exchanges of capital assets held for not more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for not more than 6 months.

"(b) As part of his gains and losses from sales or exchanges of capital assets held for more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for more than 6 months.

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b)."

shown below.[4]   The term "partnership" as used in § 182, Internal Revenue Code, means ordinary partnerships. *Burk-Waggoner Assn.* v. *Hopkins,* 269 U. S. 110, 113. When two or more people contribute property or services to an enterprise and agree to share the proceeds, they are partners.[5]   The Court says, *Tower* opinion, *ante,* pp. 286–287, that "When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both."   The suggestion seems to be that an inference of intention entirely contrary to all the primary facts may be deduced at will and without challenge by the Tax Court.   People intend the consequences of their acts.   When all the necessary elements of a valid partnership exist and no evidence is produced which points the other way, an intention to be partners must follow.   Lindley, Partnership (10th Ed.), 44. This situation exists in this and the *Tower* case.   The purpose to reduce taxes on family income certainly is not evidence of intention not to form a partnership.

---

[4] 26 U. S. C. § 3797. "Definitions.  (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

. . . . .

"(2) Partnership and partner.  The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on; and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization."

[5] *Campbell* v. *Northwest Eckington Co.,* 229 U. S. 561, 580; *Karrick* v. *Hannaman,* 168 U. S. 328, 334; *Meehan* v. *Valentine,* 145 U. S. 611, 618; *Berthold* v. *Goldsmith,* 24 How. 536, 541; *Ward* v. *Thompson,* 22 How. 330, 334.

Mich. Stat. Anno. (1937), Chap. 191, Title 20, § 20.6.  "Sec. 6. (1) A partnership is an association of two [2] or more persons to carry on as co-owners a business for profit; . . ."

The wives contributed property if the gifts of money for investment in the partnerships were valid. The Court treats the validity of the gift in the *Tower* opinion, *ante,* p. 289, as immaterial. In this, the *Lusthaus* case, there is no question made by the Tax Court as to the validity of the gift. Since the Revenue Code recognizes the power of a taxpayer to make gifts of his property on payment of a gift tax where due, I. R. C., 1000 *et seq.,* such a transfer is valid if real and complete. There was no evidence in either the *Tower* or this case that the fact conditions for a completed gift were not satisfied or that a genuine gift was not intended, or that the husband in fact or in law retained any right or power to deprive the wife of the property given to her or the income from it. Property was transferred absolutely and beyond recall without consideration from the husband to the wife. That is a gift as effective between husband and wife as between strangers.[6] She did not hold in trust for her husband.

The husband was the managing partner but had no control otherwise over the distribution of assets on dissolution or of withholding her share of the earnings when distributed. Before distribution they were her earnings held subject to her right to an accounting and taxable to her under the Revenue Laws. This distinguishes the case from the short term trust of *Helvering* v. *Clifford,* 309 U. S. 331. Management of a business which involves only the risk of the capital of another is not the control to which the *Clifford* case refers.

To us the evidence shows, without any contradiction, that in consummation of the husband's gift to the wife a valid partnership was created to which the federal tax acts are applicable. There is no finding and no evidence that the transaction was pretended or a sham, or that the

[6] *Burnet* v. *Guggenheim,* 288 U. S. 280, 286; *Helvering* v. *New York Trust Co.,* 292 U. S. 455, 462; *Bogardus* v. *Commissioner,* 302 U. S. 34, majority's and minority's definition; *Smith* v. *Shaughnessy,* 318 U. S. 176; *Helvering* v. *American Dental Co.,* 318 U. S. 322, 330.

husband in fact or in law retained any power to deprive the wife of any part of her contribution to the capital or her share of income derived from it. Two right steps do not make a wrong one. From these facts the intention to form a partnership must be inferred. Upon this record the tax advantage to the husband resulting from his gift of income-producing property is lawful because the gift was lawful and therefore effective to bestow on the wife the income thereafter derived from property which was her own.

The judgment should be reversed.

The CHIEF JUSTICE joins in this dissent.