EVERETT G. MALEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25852.   Promulgated September 5, 1951.

*Frank C. Scott, C. P. A.*, for the petitioner.
*Leonard Allen Marcussen, Esq.*, for the respondent.

OPINION.

HILL, *Judge:* The first issue involves the question whether in the years 1944 and 1945 the petitioner did, as a matter of fact, realize any gains on the liquidation of his interest inherited from his father in the 1937 wine pool and, if such gains were realized, whether they were taxable as ordinary income or as capital gains.

On the date of decedent's death, his interest in the 1937 wine pool was valued for Federal estate tax purposes at $14,000. That this amount represented the fair market value of decedent's interest in the pool on the date of his death has not been put in issue. Accordingly, we hold that pursuant to section 113 of the Internal Revenue Code, one-third of this amount (1/3 of $14,000, or $4,666.67), petitioner's inherited interest, is the correct (unadjusted) basis for the determination of any gain or loss which petitioner may have realized in 1944 or 1945, the taxable years in question.[1]

As we stated in our findings of fact above, of the proceeds received by the petitioner from the liquidation of the 1937 wine pool, $426.65 received in 1944 and $323.88 received in 1945 represent amounts received by him in excess of the 1939 fair market value of his inherited interest in that pool. Before we can determine whether such excess payments constituted taxable gains in 1944 and 1945, it is necessary to

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

　*　　*　　*　　*　　*　　*　　*

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. *　*　*

examine the decedent's relationship with the association and determine the nature of the interest in the pool which petitioner inherited from the decedent.

The marketing agreement set out in our findings of fact, which the decedent, as a member of the Woodbridge Vineyard Association, entered into with that association, bound him for a period of 5 years to deliver wine grapes to the association for processing into wine to be sold by the association. While it might be argued that the language in this agreement to the effect that the "member hereby sells and conveys" grapes, etc., and the language contained in the by-laws (incorporated into the contract by reference) to the effect that the grapes were to become the property of the association on delivery to it support the proposition that the parties intended a sale of grapes to take place, we believe that this language merely indicates the intent of the parties that legal title in such grapes was to pass on delivery to the association. Furthermore, we believe that the manner in which the association operated indicated that no sale was intended to take place. The agreement named no sales price, nor any method whereby a sales price could be determined, neither does the evidence show that the parties at any time intended that the members of the pool were to receive at some future time a reasonable value for the grapes delivered. The association did not even make any advances to its members on their delivery of grapes to it. It is clear that the parties intended that each member should deliver his crop of grapes to the pool, bear his proportionate share of the expenses of the pool and, after the wine or other products were sold, receive his share of the profits, all of which were the property of the members of the pool.

In similar cases where the question of the relationship between a marketing cooperative, organized under chapter 4 of the Agricultural Code of the State of California, and its members has arisen, the courts have stated that this relationship is one of trust. *California & Hawaiian Sugar Refining Corp. Ltd.* v. *Commissioner*, 163 F. 2d 531; *San Joaquin Valley Poultry Producers Association* v. *Commissioner*, 136 F. 2d 382; *Bogardus* v. *Santa Ana Walnut Growers Assn.*, 108 Pac. 2d 52.[2] Accordingly, we hold that the relationship between

---

[2] In *California & Hawaiian Sugar Refining Corp.* v. *Commissioner*, *supra*, the Circuit Court in reaching its conclusion as to the relationship in question stated :

> It thus appears that under the California law the relationship created by the contract in the "passage of title, and the terms of purchase and sale,"—that is from the very beginning—is that of a trust, with the members as settlors creating a trust estate for themselves as beneficiaries.

The Court also quoted at length and with approval from *Bogardus* v. *Santa Ana Walnut Growers Assn.*, *supra*, decided by the District Court of Appeal, Fourth District, California. This quotation included the following language :

> It is respondent's contention, with which we agree, that at all times the relationship between the grower member and the local association, and between the local association and the central association, was that of principal and agent, or beneficiary and trustee; that a fiduciary relationship existed which required at all times that

the Woodbridge Vineyard Association and its members was not that of vendor and vendee and the parties did not contract for the sale of grapes by the members to the association.

Since the producer-members did not sell their grapes to the association, it follows that after such grapes were delivered and became part of a certain wine pool each producer-member at all times retained an equitable interest in that pool in proportion to the quantity of grapes he had contributed and was entitled to his pro rata share of the profits realized from the sale of the products of that pool. It is also apparent that while the value of any producer-member's interest in a given pool might be estimated as of any given date, the amount of his profit or income could not be fixed until after the pool was liquidated, that is, after the wine and other products of the pool were sold and the processing, marketing and other expenses set off against such proceeds. On the date of petitioner's father's death in 1939 a substantial part of the 1937 pool, which contained his grapes, had not yet been liquidated. Petitioner and his sisters succeeded to their father's interest in this pool and a value was placed on such interest for Federal estate tax purposes. Liquidation of this pool took place thereafter during the period 1939–1945. The association during this period made payments to the petitioner of such liquidation proceeds and in 1944 and 1945 such payments, when added to previous payments, exceeded the 1939 fair market value of petitioner's inherited interest in the 1937 pool.

From the foregoing consideration of the relationship between the decedent and the association and also the manner in which the association operated, it is apparent that the petitioner inherited from his father not merely an equitable interest in the 1937 pool measured by the value of the wine and other products at whatever stage of development they were in in 1939 but also the right to share in a certain percentage of any profits which would be realized over a period of years from the sales by the association, in the normal course of its business, of the finished products of this particular pool. It is also apparent that in the process of liquidating the pool, the sales of the wine and other products were made by the association on behalf of

these associations account to the grower member for all proceeds received from the sale of walnuts, and required the grower member to bear his proportionate share of all losses sustained in the marketing and sale of walnut products. [Cases cited.] Both of these cases [cited] involve actions between a member of a non-profit cooperative marketing association and said association for an accounting, and for the determination of rights involving proceeds received from sales of marketed products. In each of these two cases marketing contracts had been entered into between the purchaser and association, which contracts provided for the immediate passage of title and were otherwise couched in terms of outright purchase and sale. In each of the cases cited the court held that the provisions for passage of title, and the terms of purchase and sale, were merely for convenience in marketing operations, and that the real relationship between the parties was one of trust, or of a fiduciary character. * * *

the members and the proceeds of such sales were returned to the members after expenses were deducted therefrom.

It follows that part of the 1944 and all of the 1945 liquidation proceeds received by the petitioner represent an increment over and above the value of his interest in the pool acquired in 1939. Accordingly, we hold these amounts, $426.65 received in 1944 and $323.88 received in 1945, constitute taxable gains to the petitioner in those years.

The taxability of such gains realized by the petitioner as capital gains depends on the question as to whether the petitioner's interest was a capital asset. "Capital assets" are defined in the Code as follows:

SEC. 117.  CAPITAL GAINS AND LOSSES.
   (a) DEFINITIONS.—As used in this title—
      (1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or real property used in the trade or business of the taxpayer;

It appears that the interest of the petitioner acquired by inheritance in this particular wine pool is independent of petitioner's operation of his father's vineyard in partnership with his sisters, and is independent of any membership he himself may have later acquired in the association, and does not fall within the exclusions of section 117 of the Code. The petitioner's interest was, therefore, a capital asset held for more than 6 months and the gains realized on the distribution are taxable as a long term capital gain in each of the years in which such gains were realized, and we so hold.

The second issue concerns the petitioner's right to two additional exemptions for two of his children claimed as dependents pursuant to section 25 (b) [3] of the Internal Revenue Code. When the petitioner

---

[3] SEC. 25.  CREDITS OF INDIVIDUAL AGAINST NET INCOME.
      *      *      *      *      *      *
   (b) CREDITS FOR SURTAX ONLY.—
      (1) CREDITS.—There shall be allowed for the purpose of the surtax, but not for the normal tax, the following credits against net income.
         *      *      *      *      *      *
         (C) A surtax exemption of $500 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $500, except that if such dependent is married the exemption in respect of such dependent shall not be allowed if such dependent has made a joint return with the other spouse under section 51 for a taxable year beginning in such calendar year.
         *      *      *      *      *      *
      (3) DEFINITION OF DEPENDENT.—As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer:
         (A) a son or daughter of the taxpayer, or a descendant of either,
         *      *      *      *      *      *

and his wife filed separate returns for the year 1944 and erroneously divided the separate income of petitioner as the community property of both spouses, the wife claimed two surtax exemptions for two of their children and the petitioner claimed the surtax exemption for the other child. The respondent, upon auditing the returns, discovered their error in reporting the separate income of petitioner as community income and made the necessary adjustments. He also disallowed the two surtax exemptions claimed as credits on Mabel B. Maley's return, in which denials she acquiesced.

Were this a case where the treatment of the credits by the wife on her separate return remained unchallenged by the respondent, and petitioner's wife had not waived or was not willing to waive her claim to these two credits, we believe that the petitioner could not now claim these two additional surtax exemptions. *A. L. Lusthaus*, 3 T. C. 540, affd. 149 F. 2d 232, 327 U. S. 293. However, in this case the wife's claim on her return for the two surtax exemptions was due to erroneous inclusion of separate income of the petitioner as community income of both spouses. Furthermore, respondent had disallowed these two surtax exemptions on the wife's return, her claim for refund is based on this and the other adjustments made by the respondent, and the petitioner's evidence clearly proved his right to the two additional surtax exemptions. Accordingly, we hold that the petitioner is entitled to those two surtax exemptions.

*Decision will be entered under Rule 50.*