Elizabeth G. MacDonald v. Commissioner. *
Elizabeth G. MacDonald v. Commissioner
Docket No. 6910.
United States Tax Court
1946 Tax Ct. Memo LEXIS 8; 5 T.C.M. (CCH) 1098; T.C.M. (RIA) 46290; December 24, 1946
Robert J. Bird, Esq., and Robert H. Cook, Esq., for the petitioner. Clarence E. Price, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax liability for the calendar year 1941 in the amount of $12,822.49. The question is whether a portion of income derived from a certain partnership is for income tax purposes properly attributable to petitioner or her daughter. Petitioner filed her income tax return with the collector of internal revenue for the Michigan district. The case was submitted on oral testimony, exhibits and a stipulation of facts. The facts as stipulated are so found and as considered material hereto are summarized below. Findings *9 of Fact Petitioner is an individual who at all times material hereto resided with her husband, Glen A. MacDonald, in Saginaw, Michigan. Petitioner and her husband were friends and neighbors of Naomi and Harold Stenglein, who were husband and wife. Petitioner and Naomi some time prior to 1933 wished to supplement their respective families' income and discussed various plans to accomplish this purpose. As a result of these discussions petitioner and Naomi in 1933 went into the business of manufacturing and selling a cleaning compound. The composition of this compound had been developed by petitioner and Naomi with the spare time assistance of their husbands. On January 17, 1933, petitioner and Naomi filed a certificate for conducting business under a fictitious name, which certificate stated that they were the owners of a business being conducted under the name of Spic and Span Products. No written partnership agreement was executed by petitioner and Naomi but they had agreed orally to conduct the business on an equal partnership basis. Neither partner contributed any capital in the form of cash or otherwise. Originally materials were obtained on credit and paid for from income from *10 sales. Petitioner and Naomi made all the original arrangements for the manufacture and sale of the cleaning compound. In 1934 petitioner's husband became a salaried employee of the partnership acting as its general manager. Petitioner and Naomi, as partners, obtained two patents on their cleaning compound, one in 1936 and the other in 1938. In attempting to have registered the name Spic and Span Products, it was discovered that another company had registered this name and an assignment from such other company to the partnership was made in July 1939. In 1940 Naomi's husband became a salaried employee of the partnership acting as sales and advertising manager. The business grew rapidly. Its sales and net profits from 1933 to 1941, inclusive, were as follows: Year
Sales
Net Profits
1933
$ 4,005.92
$ 1,256.73
1934
10,826.05
2,594.42
1935
19,743.18
5,771.47
1936
38,822.14
11,089.41
1937
39,576.74
7,843.75
1938
63,406.67
17,726.49
1939
95,371.51
27,691.19
1940
204,042.26
57,852.62
1941
339,901.67
96,018.38
Before and after January 1941 both families discussed the partnership business and its growth and had considered the desirability of *11 taking their respective children into the business. Petitioner had one daughter and Naomi had three children, the oldest of which was a son. Petitioner's daughter, Ellen, became of age in 1939 and had then one more year of college before graduation. In June 1940 Ellen graduated from college and was engaged to be married in September to a man named Stevens. Before the wedding petitioner, her husband, daughter and prospective son-in-law discussed the question of petitioner giving her daughter a one-fourth interest in the partnership business. It was proposed during this discussion that Ellen and her prospective husband settle in Saginaw and that Ellen's husband enter the partnership business. Ellen married Stevens in September 1940 and the couple thereafter lived in Detroit. Stevens had a reserve army commission and the consequent uncertainty of his future postponed any decision regarding moving to Saginaw. During the Christmas holidays of 1940 petitioner told her daughter that she was prepared to give her daughter a one-fourth interest in the partnership. Prior to this time petitioner's husband had conferred with an internal revenue agent concerning the proper gift tax procedure. Such *12 agent had suggested that the gift be postponed until the partnership books for 1940 had been closed which would facilitate the valuation of the gift. After the books were closed for 1940 the agent valued a one-fourth interest in the partnership business at $44,000. Petitioner filed a gift tax return for 1941 reporting a gift of a one-fourth interest in the partnership to her daughter made January 22, 1941, valued at $44,000. Petitioner's daughter filed an appropriate donee's information return to the same effect. On January 27, 1941, a new certificate for conducting business under a fictitious name was filed which included the name of Ellen Stevens as an owner of the business. No written partnership agreement was entered into. There was at that time no written assignment to Ellen of any interest to the trade name or the patents of the partnership. Naomi approved and consented to the new arrangement and intended at some future date to bring her children into the business when they became of age. No legal or accounting advice was obtained in connection with this transaction. The assets, liabilities and capital accounts of the owners as of January 1, and December 31, 1941, were *13 as follows: January
December
1, 1941
31, 1941
ASSETS
Cash
$ 7,899.89
$ 6,238.18
Trade Accounts Receivable
8,192.67
16,287.57
Notes Receivable
7,500.00
4,000.00
Inventories
5,223.79
70,807.85
Furniture and fixtures
532.71
480.17
Other assets
8,000.00
2,000.00
$37,349.06
$99,813.77
LIABILITIES
Trade accounts payable
$ 4,217.82
$10,218.48
Employees' accounts
12,705.98
$ 4,217.82
$22,924.46
CAPITAL ACCOUNTS
Elizabeth G. MacDonald
$19,735.98
$25,261.44
Naomi W. Stenglein
13,395.26
29,123.28
Ellen M. Stevens
22,504.59
$33,131.24
$76,889.31
$37,349.06
$99,813.77
The capital accounts of the owners as carried on the partnership books represented only the accumulated undistributed share of earnings due each owner, since there had been no capital contributions to the business in the usual sense. The trade name and patents of the partnership were not carried on the books as assets because they were not considered as having any cost basis. The following schedule shows the withdrawals of earnings by petitioner, Naomi and Ellen during 1941 and 1942: Naomi W.
Ellen M.
Petitioner
Stenglein
Stevens
Balance January 1, 1941
$19,735.98
$ 13,395.26 $
1941 profits
24,004.60
48,009.19
24,004.59
$43,740.58
$ 61,404.45
$24,004.59
1941 drawings
18,479.14
32,281.17
1,500.00
Balance December 31, 1941
$25,261.44
$ 29,123.28
$22,504.59
1942 profits
39,719.07
$ 79,438.13
39,719.07
$64,980.51
$108,561.41
$62,223.66
1942 drawings
19,094.27
31,515.58
22,504.59
Balance December 31, 1942
$45,886.24
$ 77,045.83
$39,719.07
*14 Under an agreed policy the owners for the most part refrained from withdrawing prospective profits. The usual practice was to withdraw only amounts which had been credited to their accounts after the books had been closed for the year. This policy accounts for the slight withdrawal by Ellen for the year 1941. There was, however, no agreement or understanding that Ellen was in any way restricted in withdrawing the earnings credited to her account. When Ellen wished to withdraw amounts from her account she would usually telephone her father in Saginaw from Detroit and request the amount desired. Her father would have a partnership check prepared and sent to her. These checks were signed by petitioner and Naomi who customarily signed all the partnership checks. Ellen was not required to sign partnership checks as her absence from Saginaw made it impracticable for her to do so. There was no restraint on Ellen's use of the funds withdrawn. As petitioner's and Naomi's husbands had taken over the active operations and management of the partnership business, petitioner and Naomi gradually withdrew. The husbands consulted with their wives on various partnership plans and problems as they *15 arose and the two families, being close, discussed business together a great deal. During 1941 petitioner and Naomi devoted approximately two hours a day to the business. In the fall of 1941 Naomi became ill and was unable to devote any time to the business. In 1941 after Ellen had been given an interest in the business, she spent approximately two to three hours a week on partnership affairs. This time was largely spent in telephone conversations with her father or informal conversations with her family while visiting or being visited by them. Ellen had had no business experience. Petitioner, in her income tax return for 1941, reported $24,004.60 as income from the partnership. Ellen reported, in her income tax return for 1941, the amount of $24,004.60 as income from the partnership. Respondent, in his explanation accompanying the notice of deficiency, stated: (a) You reported income in the amount of $24,004.60 from the business known as Spic and Span Products, Saginaw, Michigan, which has been increased by $24,004.60 representing the 25% portion of the net income of the business reported by your daughter, Mrs. Ellen M. Stevens. It is held that 50% of the net income of Spic *16 and Span partnership for the year 1941 is taxable to you under Section 22 (a) of the Internal Revenue Code. The transactions performed for the purpose of giving the daughter a one-fourth interest in the business were not actuated by an intent to join with the daughter for the purpose of carrying on business. Opinion The question is whether or not Ellen is a partner for income tax purposes. In Commissioner v. Tower, 66 S. Ct. 532, the Court said: * * * A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. * * * The valid existence of a partnership for tax purposes is determined by considering "whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, * * *." Commissioner v. Tower, supra. A careful consideration of the facts and circumstances of the instant case has satisfied us that the claimed *17 inclusion of Ellen as a partner was not "really and truly intended * * * for the purpose of carrying on business." We have been unable to discover any satisfactory business purpose for her inclusion. No capital resource was added to the partnership nor were any appreciable services to the partnership obtained by her purported inclusion. The conduct and operation of the business for all practical purposes continued after the daughter's alleged inclusion as before. In the absence of any persuasive business purpose being shown we can not avoid the conviction that the daughter's claimed inclusion as a partner was essentially the result of her filial status. It seems inconceivable to us that any one other than a member of the families would have been included as a partner by gift and without appreciable contribution of business experience or services. Petitioner's proof and argument stress the point that the purported inclusion of the daughter did convey ownership to the daughter in the partnership assets and those assets, particularly the patents and trade names, constituted important income-producing factors. While this may be true it does not follow that such ownership constituted *18 the daughter a partner. As said in Commissioner v. Tower, supra: * * * The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. * * * The question here, as stated above, is whether there was a real intent to create a partnership. A donative intent which may satisfy the requirements of an inter vivos gift of a portion of partnership assets is not the same nor does it necessarily satisfy the intent required to create a partnership. Much of petitioner's proof stresses the appearance of the daughter's name on certain formal documents of the partnership. This line of evidence and the arguments based thereon substantiate perhaps the fact of the daughter's ownership without altering, in our opinion, the controlling fact that there was not, regardless of donative intent, any real and true intent to create a partnership for carrying on business recognizable for income tax purposes. For the above reasons, we hold that respondent correctly determined the deficiency in question. Decision will be entered for respondent. *19 Footnotes
*. Petitioner's motion to vacate and set aside this memorandum opinion denied January 15, 1947., 6 TCM -.↩