Thomas R. Simmons, William P. Simmons, D. R. Simmons and Jack W. Simmons v. Commissioner.
Simmons v. Commissioner
Docket Nos. 9243, 9244, 9245, 9246.
United States Tax Court
1946 Tax Ct. Memo LEXIS 109; 5 T.C.M. (CCH) 700; T.C.M. (RIA) 46198; August 9, 1946
*109 Robert Ash, Esq., Munsey Bldg., Washington, D.C., and James D. A. Holley, C.P.A., Tampa Theater Bldg., Tampa, Fla., for the petitioners. F. L. Van Haaften, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve deficiencies in petitioners' income taxes for 1943 in the following amounts: Thomas R. Simmons
$ 5,327.98
William P. Simmons
5,566.66
D. R. Simmons
18,647.53
Jack W. Simmons
25,475.23
The single question in issue is whether petitioners are taxable on all of the income of two partnerships known as Simmons Brothers and Simmons Company after they had undertaken to transfer a portion, or in some instances all, of their interests in the partnerships to their wives. Findings of Fact The petitioners are brothers. Thomas R. Simmons resides at Tennille, Georgia, William P. Simmons at Macon, Georgia, and D. R. Simmons at Bainbridge, Georgia. They all filed their income tax returns for 1943 with the Collector of Internal Revenue for the District of Georgia at Atlanta. Jack W. Simmons is a resident of Tallahassee, Florida. He filed his return with the Collector for the District of Florida. Petitioners *110 are mutually interested in a number of business enterprises located in Georgia and Florida. They own all of the stock of the Elberta Crate & Box Company which in turn owns all of the stock of the Southern Crate & Veneer Company. Those corporations are both engaged in the manufacture of wooden crates and containers for packing fruits, vegetables and other commodities. Both companies have been operated by petitioners or members of their families for a number of years. The Elberta Crate & Box Company has a plant at Bain-bridge, Georgia, which is managed by D. R. Simmons and another plant at Tallahassee, Florida, managed by Jack W. Simmons. The Southern Crate & Veneer Company, located at Macon, Georgia, is managed by William P. Simmons. Jack and D. R. Simmons own 42 per cent each of the stock of the Elberta Crate & Box Company while Thomas R. and William P. Simmons own 8 per cent each. In 1937, the four petitioners purchased a veneer mill located at Cottondale, Florida, and organized a partnership under the name of Simmons Brothers to operate it. Their percentage interests in the partnership were the same as their holdings in the Elberta Crate & Box Company stock. In 1939, they organized *111 another partnership under the name of Simmons Company to operate a veneer mill at Tennille, Georgia. Their percentage interests in this partnership were just the reverse of those in the Simmons Brothers partnership; that is, Thomas R. and William P. Simmons owned 42 per cent each and D. R. and Jack W. Simmons owned 8 per cent each. Both of these partnerships manufactured single ply veneers of the type used by Elberta Crate & Box Company and Southern Crate & Veneer Company in the manufacture of packing boxes. They supplied those corporations with all of their veneer materials and sometimes had a small surplus which they sold to the public. In 1941, the petitioners all decided to admit their wives as partners in the Simmons Brothers and Simmons Company partnerships. They had been talking over the matter for some time among themselves and with their attorney. On July 18, 1941, an agreement was entered into purporting to create a new partnership of Simmons Brothers to be composed of Jack W. Simmons, D. R. Simmons, Ellen Carswell Simmons, the wife of D. R. Simmons, Elizabeth Burney Simmons, wife of Thomas R. Simmons, and Betty Sweet Simmons, the wife of William P. Simmons. The percentage *112 interests and the capital contributions of each of the parties named were to be as follows: Percentage
Capital
Interests
Contributions
Jack W. Simmons
42%
$18,480.00
D. R. Simmons
21%
9,240.00
Ellen Carswell Simmons
21%
9,240.00
Elizabeth Burney Sim-
mons
8%
3,520.00
Betty Sweet Simmons
8%
3,520.00
The agreement provided that each partner would pay into the partnership his or her share of the capital and that the net profits of the business would be determined as soon as practicable after the 31st day of July in each year and be distributed to the partners in proportion to their capital interests, except as to such amounts as the partners might mutually agree to set aside in a reserve fund, or as they might elect to leave as a credit to their accounts in the partnership books. A bill of sale was executed by the petitioners at the time the agreement was entered into purporting to transfer all of the assets of the old partnership to the new partnership. The total assets of the company as shown by its balance sheet as of August 1, 1941, was $40,839.55. None of the wives paid any money or property of their own for their interest in the partnership. *113 The wife of Jack W. Simmons, Sarah Scott Simmons, was not a party to the new partnership agreement of July 18, 1941, because of the fact that at the time the agreement was executed she had not been declared a "free dealer" under the laws of the State of Florida and for that reason was thought not to be eligible to become a partner in the business. However, on August 2, 1941, her husband, Jack W. Simmons, executed an instrument purporting to transfer to her a 30 per cent interest in the new partnership, thereby reducing his 42 per cent interest to 12 per cent. In consideration for her 30 per cent interest she was said to have paid $13,200 to her husband. To carry out this transaction Jack W. Simmons gave her a check on his personal bank account for $13,500 which she deposited in her personal account and simultaneously gave him her check for $13,200. Sarah Scott Simmons was declared a "free dealer" by decree of a Florida court on December 11, 1941. The public with whom Simmons Brothers did business, the employees and the insurance companies were notified of the change in the membership of the partnership. The names of the partners and their respective interests were registered *114 under the trade names statute of the State of Florida. On October 10, 1941, an agreement was executed which purported to create a new partnership of Simmons Company to be composed of Thomas R. and William P. Simmons and their wives and also the wives of D. R. and Jack W. Simmons. The percentage interests and the capital contributions of each of the partners were stated to be as follows: Percentage
Capital
Interests
Contributions
Thomas R. Simmons
16%
$5,000.00
Elizabeth Burney Sim-
mons
26%
8,125.00
Wm. P. Simmons
16%
5,000.00
Betty Sweet Simmons
26%
8,125.00
Ellen Carswell Simmons
8%
2,500.00
Sarah Scott Simmons
8%
2,500.00
In all material respects, other than those stated above, the terms of this agreement and the circumstances of its execution were similar to those relating to Simmons Brothers. A bill of sale was executed transferring the assets from the old partnership to the new. The business of both Simmons Brothers and Simmons Company was conducted in substantially the same manner after the new partnership agreements were executed as before. Simmons Brothers was under the management of an employee, while Simmons Company was managed *115 by Thomas R. Simmons with only advisory assistance from the other petitioners or their wives. The plant of Simmons Brothers first located at Cottondale, Florida, was destroyed by fire in January, 1942, and the insurance proceeds, together with the other liquid assets amounting altogether to about $48,000, were reinvested in a new plant located at Arlington, Georgia. The earnings of Simmons Brothers for the fiscal years ended July 31, 1941, 1942 and 1943, as reported in its income tax returns, were as follows: 1941
$ 49,927.58
1942
11,793.70
1943
109,475.72
There was no distribution of earnings made by the company in 1941, 1942 or 1943. Simmons Company reported net earnings of $662.02 for the calendar year 1940; $25,682.16 for the period January 1, 1941 to October 15, 1941; $29,891.19 for the fiscal year ended September 30, 1942, and $16,206.31 for the fiscal year ended September 30, 1943. No income was distributed in 1942 but there was a distribution of $1,500 in 1943. The distribution was in the proportion of the partners' capital interests. All of petitioners filed gift tax returns for 1941 but only one of the returns, that of Jack W. Simmons, disclosed *116 any tax liability. He reported gifts in 1941 of $42,800 with a resulting gift tax liability of $46.20. Petitioners' wives did not contribute any capital either to Simmons Brothers or Simmons Company except what was given to them by their husbands for that purpose. They did not perform any services of any consequence on behalf of either of the companies, either before or after they allegedly became partners, and did not participate to any important extent in their management. The wives all filed income tax returns for 1943 in which they reported their distributable shares of income from Simmons Brothers and Simmons Company. The only other income reported by the wives in 1943 was $796.48 reported by Sarah Scott Simmons and $853.73 reported by Ellen Carswell Simmons. The Commissioner has determined that all of the income reported by the wives from Simmons Brothers and Simmons Company for 1943 is taxable to petitioners. Opinion LEMIRE, Judge: We do not think that the instant cases are distinguishable in principle from Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293, both decided February 25, 1946. In the Tower case the *117 Court said: There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws. * * *
In some respects the facts here more closely resemble those in Lusthaus v. Commissioner, supra, where the husband undertook to make his wife a partner with him in a retail furniture business by giving her a sum of money with which to buy a partnership interest from himself. *118 It was held that the purported gift did not result in a transfer of any interest in the business to the wife. Petitioners attempt to show that the wives were brought into the partnerships so as to relieve them, the petitioners, of some of the burdens of their business affairs. The evidence is far from convincing that this was the situation. For instance, Jack W. Simmons testified that he had very little to do with the operation of the companies either before or after the wives were made partners. By its very nature the business, that of buying logs and processing them into veneer, was not one to which the wives could have been expected to make any noteworthy contribution. The evidence is that they did not do so. They do not claim to have performed any manual services on behalf of either of the companies but claim that they participated in an advisory capacity. The evidence leaves considerable doubt that any one of them made or was qualified to make any worthwhile contribution of services, advisory or otherwise, to the business. It is noted that in some instances petitioners undertook to assign their entire fractional interests in the partnership to their wives and not to make their *119 wives partners with them. We see no difference in principle, however, between an attempted gift of a part of a fractional interest in a business and the whole of that interest. The ultimate question is whether the taxpayer did not in fact retain such control and other incidences of ownership that he must be regarded as the owner of the business and liable for the tax on the income therefrom. Commissioner v. Tower, supra. Petitioners further attempt to explain the assignment of the partnership interests to their wives as a plan to reduce their own estates with a view to lessening their inheritance and estate taxes. Again on this point the evidence lacks conviction. The more immediate and more obvious result, which could hardly have been overlooked by the petitioners or their advisors, was the reduction of income taxes by a division of the family income. It is not uncommon for persons of large means to undertake, in their declining years, to reduce their estate by inter vivos gifts to the natural recipients of their bounty, with perhaps the savings in inheritance and estate taxes as a motive, but the evidence does not indicate that that was the situation here. What *120 the petitioners undertook to do was to give away the controlling interests in a going business which was the source of a substantial portion of their earnings and which, moreover, was a vital factor in the conduct of their other business enterprises. The Elberta Crate & Box Company and the Southern Crate & Veneer Company which petitioners wholly owned used practically the entire output of veneer manufactured by Simmons Brothers and Simmons Company and doubtless were largely dependent upon that output. It is unreasonable that petitioners should have intended to give up either the control or management of those companies, even to their wives, and the evidence does not require that conclusion. The evidence as a whole affords no basis for distinguishing the situation here from that commonly found in the ordinary family partnership cases involving superficial attempts to reallocate income within the family group. We think that the Commissioner has correctly determined that petitioners are taxable on all of the earnings of both Simmons Brothers and Simmons Company in the proportion of their interests in the companies at the time of the abortive attempts to bring the wives into the partnerships. *121 Decision will be entered under Rule 50.