Otto A. Kohl v. Commissioner.
Kohl v. Commissioner
Docket No. 4353.
United States Tax Court
1947 Tax Ct. Memo LEXIS 239; 6 T.C.M. (CCH) 425; T.C.M. (RIA) 47109; April 23, 1947
*239 T. M. Ingersoll, Esq., 1120 Merchants Nat. Bank Bldg., Cedar Rapids, Iowa, for the petitioner. Gene W. Reardon, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $19,036.94 in the petitioner's income tax for the calendar year 1941. The sole issue is whether the Commissioner erred in holding that the net income from a business conducted under the trade name of the Bupane Gas Company for the eight months ended December 31, 1941, was taxable to the petitioner. The petitioner claims that the income in question was distributable between certain trustees and himself, as partners. The Commissioner disregarded the partnership for income tax purposes. Findings of Fact The petitioner is an individual who resides in Cedar Rapids, Iowa. He filed his 1941 return with the collector of internal revenue for the district of Iowa. He reported therein a net profit of $13,857.35 from a business in which he was engaged under the trade name of the Bupane Gas Company (hereinafter referred to as Bupane). That amount was explained in the return as "income from 1-1-41 to 4-30-41 when business became a partnership." *240 The business known as Bupane was started in 1933 by the petitioner as a sole proprietorship. The principal business was the bottling, sale, and distribution of liquified petroleum gas for domestic use. A byproduct known as hexane was sold to soy bean process plants; another by-product known as pentane was sold to coal process gas plants and to paint companies. The operations of Bupane were conducted in eight states throughout the Midwest, with its principal place of business at Cedar Rapids. In 1941 it had two manufacturing plants which supplied some four hundred dealers, including four of its own retail distribution establishments. Bupane distributed liquified gas in tank cars to the dealers who put the gas under pressure into steel cylinders for ultimate distribution to the consumers. The cylinders and other equipment were leased by the consumers from Bupane. The petitioner employed Clarke Van Meter in 1935 and Marvin M. Cobb in 1936. Van Meter had graduated from Iowa State College where he had majored in engineering. His original duties consisted of routine office work. Cobb had graduated from the University of Iowa where he had majored in accounting. He was employed as an accountant. *241 Both men were trained by the petitioner to assume positions of responsibility in the business of Bupane. In the early part of 1941 Van Meter was designated as general manager. He supervised manufacturing, distribution, advertising, sales, purchases, and all personnel. He had authority to sign checks. He was first authorized to sign checks in 1938. In 1941 he signed about 90 per cent of all checks. Cobb acted as comptroller. He supervised all accounting and record keeping, insurance and legal matters, audited the records of all branch establishments, and arranged all routine finances. Van Meter was paid a salary of $2,850 in 1941 and his salary was $3,600 in the years 1942 through at least 1944. Cobb was paid a salary of $2,400 in the years 1941 through 1944. His salary in 1946 was $4,200. The petitioner enlarged the duties and responsibilities of Van Meter and Cobb in the management of Bupane because he wanted to devote more of his time to the development of new products. In 1940 he had begun to mine a volcanic deposit near Fernley, Nevada. That material was processed and packaged by the petitioner for sale to various users. It was sold as a floor covering for poultry houses under *242 the name of "Chick Bed." Other products developed by the petitioner included "Acquaphil," which was used as a filler in the manufacture of paper, and "Sterilair," which was used as a deodorant for refrigeration. On or before April 21, 1941, the petitioner had practically relinquished the routine management of Bupane to Van Meter and Cobb. Thereafter he devoted between 25 to 30 per cent of his time to the principal business of Bupane and the balance of his time was spent in the promotion of new products. By an agreement mentioned hereinafter the petitioner retained the right to make all major business decisions and in practice Van Meter and Cobb consulted him frequently. On April 21, 1941, the petitioner executed a trust agreement for the benefit of his wife and children. He named Van Meter and Cobb as trustees and they agreed to accept the trusteeship. The petitioner's son, Otto, was named to become a co-trustee upon attaining the age of 21 years. The trust was to consist of property which was not identified by the agreement but was referred to in a subsequent agreement described hereinafter. The petitioner agreed to convey or assign such property irrevocably to the trustees. He *243 also agreed not to amend or in any manner or form change the trust agreement. The trustees were given discretion to pay up to 25 per cent of the income to petitioner's wife and to pay the balance in equal shares to his children or to accumulate the income in a general fund for the equal benefit of each of the children or their survivors, with other provisions not herein material. The principal and any accumulated income was to be distributed in equal shares to each of the children or their survivors, with other provisions not herein material, upon the death of the petitioner's wife or when the youngest child attained the age of 21 years, whichever were later, unless in the discretion of the trustees it was decided to be for the best interests of all the beneficiaries to terminate the trust. The trustees were given complete control and management of the trust property and were not limited to the investments prescribed by the statute of any state for trust estates. The agreement provided, however, that the trustees could make no sale, investment or reinvestment during the petitioner's lifetime without his written approval unless he were under a legal disability or failed to approve or *244 disapprove within 30 days after notice of a proposed sale, investment or reinvestment. The petitioner's family consists of his wife, Dorothy, and three children who were minors in 1941. The eldest child, Otto, Jr., was then 17 years of age and was attending college. He worked for Bupane during his vacation. No other members of the petitioner's family contributed any services to that business. On April 30, 1941, the petitioner executed an agreement with Van Meter and Cobb in their capacity as trustees under the trust agreement executed on April 21, 1941. The petitioner and the trustees agreed to engage in and carry on business under the name of Bupane. The petitioner purported to sell and the trustees purported to buy a 49 per cent interest in the business which the petitioner had theretofore conducted under the same trade name as a sole proprietorship. The agreed sale price of $44,273.97 represented 49 per cent of the book value of the property owned and used in connection with the petitioner's business. That amount, evidenced by a promissory note which was executed by the trustees on April 30, 1941, was payable to the petitioner within 10 years with interest at the rate of 2 *245 per cent. It was agreed that the note was to be paid only from the net profits of the business. The parties also agreed that all net profits and losses would be apportioned in accordance with their respective interests in the business. The liability of Van Meter and Cobb was limited, however, to their liability as trustees. The petitioner, who was referred to as the "First Party" in the agreement, reserved the following rights: It is further agreed and understood that First Party being the owner and retaining the ownership of fifty-one one-hundredths (.51) interest of all of said business, and of all said real and personal property, has the controlling interest in all of the business carried on under said name of Bupane Gas Company, and that by reason thereof, First Party has and is hereby given the right to determine all questions of buying or selling either real or personal property, or renting the same, or any part thereof, and pledging the credit of the Company whenever he deems it necessary, in the exercise of his judgment and discretion necessary and proper to do so, and to determine credits to be extended by the Company in the carrying on and conduct of its business and the *246 pledges of credit to be taken by the Company to secure any credits extended in order to preserve the rights and protect the interests of the Company, and that whenever a question arises about which there is a difference of opinion, as between or among the parties hereto, the ultimate determination of the First Party as to the course to be pursued in any such matter, shall be final and binding upon all of the parties hereto. * * *
It is further agreed and understood between the parties hereto that First Party has, and is hereby given the right to determine the number of and who shall be the employees of said Bupane Gas Company, and the compensation to be paid to each and all of said employees at any time during the period covered by this contract. Except it is agreed and understood that a salary may be paid to any or all of the parties to this contract for the time spent in conducting the business herein provided for and in case such salary is paid, the same shall be fixed by the concurrence of all of the parties hereto. The physical assets of Bupane included land, buildings, furniture, manufacturing equipment, trucks and automobiles, steel cylinders and utilization equipment, *247 other appliances and parts, and inventory. The net worth per books of Bupane as of April 30, 1941, was $90,355.05. On May 1, 1941, entries were made on the books and records of Bupane by which its net worth of $90,355.05 was divided, 51 per cent to the petitioner and 49 per cent to the trust. On the same date books were opened for the trust in which a capital entry was recorded in the amount of $44,273.97 (49 per cent of $90,355.05). On or about July 7, 1941, the petitioner registered Bupane as a trade name for himself and the trustees, Van Meter and Cobb. On December 4, 1941, the petitioner and the trustees executed a supplemental agreement which provided that the business of the Chick Bed Company would be conducted as a subdivision of Bupane. Funds for that business had been furnished by Bupane. It was provided that the original agreement of April 30, 1941, would be applicable to all matters relating to the Chick Bed Company. The petitioner and the trustees adopted a fiscal period which ended on January 31. The net profit from all operations of Bupane was $54,830.48 for the nine months ended January 31, 1942, $69,435.03 for the fiscal year ended January 31, 1943, $84,159.73 *248 for the fiscal year ended January 31, 1944, $60,414.45 for the fiscal year ended January 31, 1945, and $64,573.83 for the fiscal year ended January 31, 1946. These amounts were credited on its books, 51 per cent to the petitioner and 49 per cent to the trust. The trustees adopted a fiscal year which ended on October 31. They opened an income account on October 31, 1942. The sum of $26,866.94 (49 per cent of $54,830.48) was recorded in that account and reported in the fiduciary return of the trustees for the fiscal year ended October 31, 1942. Taxes on the income so reported were paid by Bupane on behalf of the trust. Similarly, the note given by the trustees to the petitioner was paid by Bupane on behalf of the trust in three installments on October 31 of 1942, 1943, and 1944. A bank account was first opened in the name of the trust in February, 1944, and beginning February 28, 1944, monthly disbursements were made by Bupane to that account. The first distribution to the beneficiaries under the trust was made in 1946 in the form of paid-up life insurance for the beneficiaries. Van Meter and Cobb were paid trustees' fees of $2,000 each in the years 1944, 1945, and 1946. It was understood *249 between them and the petitioner that they would not receive any payments from the trust until after the trust had paid off its note to the petitioner. The amount of compensation was fixed at that time. The petitioner filed a partnership return of income in the name of Bupane for the nine-month period May 1, 1941, to January 31, 1942, in which ordinary net income of $45,842.30 and certain capital gains were reported. The net income and the capital gains were allocated on the return, 51 per cent to the petitioner and 49 per cent to the trust. The Commissioner disregarded the purported partnership in determining that net income from the business for the eight-month period May 1, 1941, to December 31, 1941, in the sum of $40,748.71 (8/9ths of $45,842.30) was includable in the petitioner's taxable income for 1941. Opinion LEMIRE, Judge: The main question is whether, for income tax purposes, the petitioner and the trustees for his wife and minor children may be recognized as partners doing business under the name of Bupane Gas Company. In deciding this question we are controlled by the principles set forth in Commissioner v. Tower, 327 U.S. 280, wherein the Supreme Court *250 said: * * * If she [a wife] either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws. Here we are dealing with a wife and minor children through the medium of a trust which the husband set up for their benefit. He purported to sell to the trust a partnership interest in a business which he had conducted as a sole proprietorship. The trust had no separate property. It purported to buy its interest in the partnership from the petitioner but agreed to pay him only from the profits of the business. Thus, the trust did not invest capital originating with it. Cf. Lusthaus v. Commissioner, 327 U.S. 293. *251 The petitioner retained a 51 per cent interest in the partnership. He expressly reserved the right to determine all questions relating to buying, selling, renting property, as well as pledging and extending credit. It was specified that his determination would be final and binding whenever any question arose about which there was a difference of opinion. He alone had the right to "determine the number of and who shall be the employees of said Bupane Gas Company, and the compensation to be paid to each and all of said employees at any time during the period covered by this contract." In practice he exercised such control. The petitioner had employed Van Meter and Cobb before he named them as trustees for his family. They had performed managerial and other vital services as employees. They continued to serve as employees after they became trustees. The trust was not required to render any services under the agreement of partnership. The agreement provided that a salary "may" be paid to the purported partners but there is no evidence that any salary was ever paid to any partner. Van Meter and Cobb were "partners" only in their capacity as trustees. The evidence is that they received *252 fees in later years from the trust, not from the partnership. They were paid salaries by the purported partnership as employees, not as partners. These facts show that the trust did not share in the management and control of the business and contributed no vital additional services through the trustees. There is no contention that it rendered vital services through any beneficiary. The petitioner says that the transaction had the dual purpose of giving Van Meter and Cobb more active participation in the business and of freeing the petitioner from his duties so that he could devote more time to the development of new products. It is clear that neither the trust nor the partnership was necessary for the accomplishment of either objective. In our opinion, the transaction served no purpose except the reallocation of the petitioner's income within his family group. The petitioner has alleged and argued that the action of the Commissioner was unconstitutional in taxing him upon the income which belonged to another, i.e., the partnership. However, the Commissioner undertook to tax the petitioner not on the income of another but on income which he "worked for, otherwise created or controlled, *253 " as in the Tower case. In our opinion, the facts support his determination and afford no basis for raising the constitutional question. The petitioner has further alleged and argued that the Commissioner had the burden of proof in this proceeding because he failed to assign any basis or reason for his determination. The deficiency was explained as resulting from the inclusion of "that portion of the net income for the year 1941 from the business conducted by you under the trade name of Bupane Gas Company which was not reported on your income tax return filed for the taxable year 1941." It is obvious that the petitioner was not misled because he has also alleged and argued that the Commissioner erred in disregarding the partnership known as the Bupane Gas Company. The burden was upon him to show that error, if any. Rule 32. The petitioner relies upon many cases which were decided before the Tower case and which are no longer of value as precedents. Those cases include Feldman v. Thomas, an unreported oral opinion (D.C., N.D.Texas, Sept. 9, 1945). However, that case [cases] was later affirmed in Thomas v. Feldman, 158 Fed. (2d)488. The petitioner relies strongly upon *254 both the trial and appellate court decisions in that case. There the taxpayers, husband and wife, who were the donors of a trust for their children, organized two limited partnerships with the husband as general and managing partner, the trust and others being special partners. We will assume from remarks made by the trial court that the husband was a co-trustee and that the other trustee was active in the business of the partnerships. The trial court found that the income from the trust as such was not taxable to the donors. The appellate court agreed with the trial court and further stated that the Tower and Lusthaus cases were not controlling because in those cases the Tax Court had found against the taxpayers. In the instant case we decide as we did in the Tower and Lusthaus cases that on the facts the partnership can not be recognized for tax purposes. We hold that the Commissioner did not err in disregarding the Bupane Gas Company as a partnership for income tax purposes. It follows that the partnership income in question is taxable to the petitioner. Decision will be entered for the respondent.