Benjamin Noble v. Commissioner.
Noble v. Commissioner
Docket No. 16750.
United States Tax Court
1948 Tax Ct. Memo LEXIS 5; 7 T.C.M. (CCH) 995; T.C.M. (RIA) 48274; December 31, 1948
*5 Held, a valid and legal partnership for tax purposes existed between petitioner and his wife during the taxable year. Sol D. Schindler, C.P.A., Robert Ash, Esq., Munsey Bldg., Washington, D.C., and Carl F. Bauersfeld, Esq., for the petitioner. William D. Harris, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion VAN FOSSAN, Judge: The respondent determined deficiencies in petitioner's income tax for the taxable years ended July 31, 1944, and July 31, 1945, in the respective amounts of $35,848.16 and $13,749.19. The sole question presented is the validity for income tax purposes of an alleged partnership between petitioner and his wife, Kathryn Noble. Findings of Fact Petitioner, an individual whose address is Philadelphia, Pennsylvania, filed his returns with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia, Pennsylvania. He is 56 years of age and has been in the garment business since 1913. From 1913 to 1932, petitioner was engaged in the manufacturing of children and women's clothing, either by himself or in association with others. On December 9, 1923, petitioner married his present *6 wife, Kathryn Noble. Kathryn Noble's father was a manufacturer of ladies' coats and suits in Philadelphia. While Kathryn Noble was in high school, she worked after hours in her father's business and on graduation, worked full time therein for about a year and a half, until six months before she was married to petitioner. In 1932 petitioner went through bankruptcy. Thereafter he started business in 1933, engaging in the manufacture of ladies' coats and cotton dresses. In 1933 petitioner, for a period of six months, was associated with one Bell under the corporate name of Noble & Bell. After six months Bell retired from the business, at which time the name of the corporation was changed to Benjamin Noble, Inc. The corporation, Benjamin Noble, Inc., was dissolved in 1936. From 1936 to August 1943, petitioner operated the business as a sole proprietor. The money with which he started business in 1933 was borrowed on life insurance policies on petitioner's life of which his wife was beneficiary. The amount so borrowed amounted approximately to $3,000. Beginning in 1933, Kathryn Noble worked regularly in the business. At that time it employed approximately 15 persons. As of July 31, 1945, the *7 business employed approximately 80 persons. Kathryn Noble had charge of the office and took care of all of its details. At that time no other office help was employed. Kathryn Noble had charge of the inside work of the factory, including general supervision of production. She was thoroughly familiar with the manufacturing process employed in the factory. Petitioner took care of the outside end of the business, including the buying of materials and the selling of manufactured products. He also handled the finances of the business. In connection with the supervision of production, Kathryn Noble distributed the work to the operators, watched that the work was done carefully, examined the completed garments, and in general, saw that the manufacturing process was carried through to completion. In addition, Kathryn Noble made out the time cards, assisted in making up and checking the payrolls, answered letters, assisted in billing and did any other office work necessary to be done. She also waited on customers or buyers when they called at the factory to examine samples. Throughout the period beginning in 1933, Kathryn Noble handled all of the styling for the business. Styling is an *8 important matter in the ladies' garment trade. The aim of the business was to sell stylish garments at a low price. In connection with the styling of garments, Kathryn Noble would purchase a lady's dress or other garment from one of the other stores or specialty shops in Philadelphia, take the garment to their factory, restyle it so as to retain its selling features but so as to produce it at a lower price. This was done by substituting trimmings or by re-designing the garment to save material. Garments produced by petitioner in 1933 were made to sell for $1.95 and $2.95. Dresses now produced retail for $3.95 to $7.95. Every garment leaving the factory carries the trade name "Kay Noble" on a label. This trade mark is copyrighted and registered. In connection with his work for the business, petitioner was required to be away from the factory for part of each day. He made it a practice to go to New York once or twice a week for the purchase of materials, and other matters of business. A show room with sales people was maintained in New York. When petitioner was not on a trip to New York, he was usually away from the factory, engaged in selling products in Philadelphia. When petitioner *9 was away from the factory, Kathryn Noble was in complete charge and made any decisions requisite to the progress of the business. Customers of petitioner's business included such stores as Gimble Brothers, Lit Brothers, Snellenburg's, Wanamaker and Oppenheim-Collins, all in Philadelphia, and Lansburgh's and Woodward & Lothrop in Washington, D.C. In July 1943, petitioner and Kathryn Noble entered into an agreement to operate the business formerly operated by petitioner as a sole proprietor. This agreement recited: * * *
"KATHRYN NOBLE has been actively associated with the said Benjamin Noble over a period of years, to-wit from 1933 to the present time, during said years the said Kathryn Noble has continuously and uninterruptedly devoted and rendered considerable time and service during each week in said years assisting the said Benjamin Noble in the successful promotion of said business, for which services the said Kathryn Noble has been paid each week varying sums as agreed between them from time to time, * * *" * * *
The agreement provided that the business should continue under the name of Benjamin Noble and that the agreement be in effect for five years from August 1, 1943. It *10 further provided that Kathryn Noble was to contribute $10,000 as a capital investment in the partnership and make further contributions as therein recited. The profits of the firm were to be divided 66 2/3 per cent to Benjamin Noble and 33 1/3 per cent to Kathryn Noble and all losses were to be borne in the same proportion. The agreement contains the following provision: "The said Kathryn Noble shall be entitled to draw annually the sum of Thirty-six Hundred and Forty ($3640.00) Dollars in such sums, weekly or monthly, as she may desire, which sums are to be charged against her share of the profits, and all profits to which the said Kathryn Noble will be entitled to receive under the terms of this agreement in excess of the sum of Thirty-six Hundred and forty ($3640.00) Dollars per annum shall remain in the firm and shall be applied as additional contributions to her capital investment in said partnership, and when her capital investment in said partnership shall equal the capital investment of the said Benjamin Noble, the profits of said Benjamin Noble, the profits of said partnership shall then be divided between the said Benjamin Noble and Kathryn Noble share and share alike. *11 " Kathryn Noble was given all rights as a co-partner, including the right to sign checks on the firm. Mrs. Noble contributed $10,000 in United States Government coupon bonds as her original contribution of capital to the partnership, pursuant to the provisions of the agreement of July 1943. The money with which the bonds were purchased had been saved by Mrs. Noble from her salary received from the business beginning 1933, from gifts of relatives and from room and board rent received from her father-in-law, who lived with the petitioner and Kathryn Noble. The idea of the partnership originated with Kathryn Noble and was insisted upon for the purpose of giving her greater financial security. During the taxable years here involved, Kathryn Noble worked continuously in the business each business day from 9 o'clock A.M. to 4:30 P.M., or later. She continued to supervise the production end of the business, including the purchasing and styling of garments. All important business matters were discussed between petitioner and Kathryn Noble. Throughout the taxable years the business of the partnership was conducted in accordance with the provisions of the agreement above referred to. *12 After the formation of the partnership, notice of the same was given to banks, the National Credit Agency and Dun & Bradstreet. Petitioner paid all household expenses, including the cost of Kathryn Noble's clothes. Kathryn Noble had a separate savings account. Title to the home, owned by petitioner and Kathryn Noble, was held in both names. Respondent held that the alleged partnership "is not recognizable for income tax purposes" and that the entire income thereof was taxable to petitioner individually. The partnership agreement of July 1943 created a valid legal partnership between petitioner and Kathryn Noble. This partnership (under which the business was operated during the taxable years) was equally valid for tax purposes. Opinion Respondent contends that the alleged partnership between petitioner and his wife fails to satisfy the principles enunciated in Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293. In the former case the Supreme Court stated: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital *13 originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C.§§ 181, 182, 26 U.S.C.A. Int. Rev. Code, §§ 181, 182. * * *" Each case must be determined on its facts and little help is gained from the citation of decided cases. In our judgment, petitioner must prevail on the facts present in this case. Not only did the wife contribute capital originating with her but throughout the taxable years she performed services which were unquestionably vital and important to the business. The evidence in the case is overwhelming in support of petitioner. In point of fact, respondent, in his brief, is hard put to find a basis for arguing against the above conclusion. He stresses certain unimportant or minor facts in or omissions from the record and contends that tax saving was the motivating and sole purpose in the mind of petitioner in the formation of the partnership. It must be said, however, that there is not one shred of evidence in the case on which to base this charge. In our judgment, *14 petitioner and his wife entered into a valid legal partnership by the agreement of July 1943, a partnership which satisfies all proper tests of a partnership both at common law and for tax purposes. Decision will be entered for the petitioner.