Florence R. Miller v. Commissioner. Sam H. Miller v. Commissioner.
Miller v. Commissioner
Docket Nos. 11424, 11425.
United States Tax Court
1949 Tax Ct. Memo LEXIS 293; 8 T.C.M. (CCH) 26; T.C.M. (RIA) 49001; January 17, 1949
*293 Lee C. McCandless, Esq., for the petitioners. Lawrence R. Bloomenthal, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve deficiencies in income tax for 1941 for Florence R. Miller in the amount of $2,610.10 and for Sam H. Miller in the amount of $1,895.79. The deficiencies result from the respondent's refusal to recognize a group of twelve trusts for the benefit of the petitioners' three minor children as partners in the Youngstown, Ohio, firm of Miller's Cut Rate Drugs, a chain of retail drug stores, and from his disallowance of a deduction for a loss of $816.03 from the operation of a kennel. By an amended answer, respondent alleges that he erred in recognizing Florence R. Miller and three trusts established for the benefit of the Miller children by William R. Miller, father of Sam H. Miller, as partners in the firm of Miller's Cut Rate Drugs for the taxable year involved. Respondent further alleges that the business was owned and operated as a sole proprietorship throughout the calendar year 1941 by Sam H. Miller, and that the deficiency in his income tax for 1941 is $11,351.71 instead of the amount previously *294 asserted. The proceedings have been consolidated for hearing and decision. Some of the facts have been stipulated and the stipulation filed is incorporated herein by reference. Findings of Fact The petitioners, Sam H. Miller and Florence R. Miller, are husband and wife residing in Youngstown, Ohio. They filed separate individual income tax returns for the year 1941 with the collector of internal revenue for the 18th district of Ohio. The petitioners were married June 26, 1929. They have three children, William R. Miller, II, Samuel H. Miller, Jr., and Barbara J. Miller, who were 10 years, 9 years, and 7 years of age, respectively, in the early part of 1941. At the time of his marriage Sam H. Miller, hereinafter referred to as the petitioner, owned a part interest in a drug store in Warren, Ohio, and stock in the W. A. Cross Company, Inc., which owned and operated a drug store in Youngstown, Ohio. By January 1, 1934, he was operating five drug stores under the name of S. H. Miller & Co. He also owned all the stock of the W. A. Cross Company, Inc., which at that time operated two drug stores, except for 50 shares, par value $100 each, acquired by his wife with funds which *295 he had given her, and one qualifying share in the name of Frank Milne. In 1934 the petitioner purported to make a gift to his wife of a one-half interest in the S. H. Miller & Co. business for the purpose of establishing a partnership with her. For gift tax purposes the one-half interest was valued at $21,000. The respondent, however, refused to recognize the gift or the partnership for 1934 and 1935 and taxed the entire net income of the business for 1934 and 1935 to the petitioner. In 1936 petitioner and his wife drew up articles of copartnership which were presented to the respondent. The earnings of the Miller business were reported on partnership returns for the years 1936 to 1940, inclusive, which respondent did not question. During the period from 1936 to 1941, inclusive, the Miller business continued to expand and to increase its earnings. Six new drug stores were added to the chain, and the earnings were increased from about $20,000 in 1936 to more than $34,000 in 1941. During this period additions of capital in the W. A. Cross Company, Inc., and in the Miller business were made in the names of both the petitioner and his wife in substantially equal amounts. The wife also *296 made payments on indebtedness owed by the petitioner to companies controlled by his father and brother, although she had no actual liability on the loans herself. All of these payments were made with funds which were given to her directly by the petitioner or were diverted to her from the W. A. Cross Company, Inc., or the Miller business by petitioner. They were made solely to match payments made by him. The petitioner and his wife withdrew some earnings from the Miller business, but a substantial part of the earnings of the business was added to capital and used for expansion. In December 1940 and January 1941 the petitioner and his wife created twelve trusts for the equal benefit of their three children. All of these trust agreements purported to transfer interests in the Miller business to the petitioner and his wife as cotrustees for the children. The trust instruments gave them broad powers, as trustees, to control the trusts' interests in the business "as though they were sole owners of such interest," to control the management and investment of the trust funds, to make other investments from either principal or income at their discretion, and to withdraw whatever compensation *297 as trustees they saw fit up to the full amount of annual income. The agreements provided that all additional trust income was to be added to principal, with no distribution to the children until dissolution of the trusts, which was to be when the youngest surviving child reached the age of twenty-five and after the death of the petitioner. All of the trusts created by petitioner and his wife were created from their existing interests in the business. In January 1941 William R. Miller, the petitioner's father, created three additional equal trusts for the children with substantially the same provisions as the trusts created by the petitioner and his wife. These three trusts were created by the gift of $15,000 in cash from William R. Miller's personal funds, to be divided into equal trusts of $5,000 each for the three children. The amount was paid over to the petitioner as a trustee to be added to the capital of the business, which was done immediately. The addition of the new capital from William R. Miller increased the total valuation of Miller's Cut Rate Drugs (successor by change of name to S. H. Miller & Co.) to $135,000. The purport of the fifteen trusts was to divide the business *298 between the petitioner and his wife and the three children, who were considered partners through the trustees, so that each member of the family was credited with a one-fifth interest in the business and a corresponding one-fifth of the earnings of the business. The trusts had no effect on the operation of the business, which was conducted just as it had been before. The petitioner's wife never took any regular, active part in the management of the business. She sometimes accompanied her husband on business trips and advised him on business decisions. She also made occasional visits to some of the stores, where she signed checks and business papers, inspected merchandise, and made suggestions to employees. However, she had no particular duties or regular hours, but merely contributed a small amount of her time when it was convenient for her to do so. The petitioner was not a druggist himself. He depended largely upon his general manager and other employees for the operation of the business. He was primarily concerned with financing the business, leaving most executive functions to his general manager. The manager was generally regarded by tradesmen and employees as the practical *299 head of the business and the petitioner as the owner. Mrs. Miller was generally known only as the owner's wife. The partnership return filed for Miller's Cut Rate Drugs for 1941 showed net income of $30,487.83, which included equal salaries of $5,200 to petitioner and to his wife. The remainder of the earnings was allocated equally to petitioner, his wife, and each of the three children. Amended returns filed in 1947 allocated the entire earnings of $30,487.83 equally among the five members of the family, without deduction of any amounts for salaries. During 1941 Mrs. Miller deposited $9,033.21 in her bank account. These funds consisted of $3,665 in checks drawn on the Miller business December 31, 1940, and $5,200 in checks drawn on the business in 1941, $102 from the W. A. Cross Company, and $66.21 from miscellaneous sources. She disbursed funds from this account during the year for the following purposes: Houseworkers
$ 431.89
Clothing and department stores
1,086.88
Medical, dental, drugs
53.00
Charity and club dues
20.00
Life and automobile insurance
68.19
Food
708.86
Music lessons
132.28
Taxes (income, real estate)
1,262.22
Investment in lot
800.00
Vacation
300.00
Repairs to house
26.17
Miscellaneous
1,356.42
$6,245.91
*300 The petitioner for many years has been interested in the Doberman pinscher breed of dog. In 1941 he purchased a prize stud dog for $1,000 and several pups for $300. He exhibited the prize dog at shows and advertised him in sporting publications in the hope of attracting dog breeders who would pay stud fees for his use. However, the dog's offspring revealed hereditary defects, which decreased his value for stud purposes, so that the fees collected did not reimburse the petitioner for his costs of maintaining the dog at a kennel, veterinarian fees, insurance, depreciation, and advertising, and the venture resulted in a loss instead of a profit as anticipated. The amount of the loss claimed on the return was $816.03, which was determined by deducting total receipts of $225 in stud fees from the total of the costs mentioned above. The respondent disallowed the deduction of the entire amount of the loss claimed on the ground that operation of the kennel was a hobby and not a business. Opinion LEMIRE, Judge: The principal question in this case is whether all the income of Miller's Cut Rate Drugs, an alleged family partnership, is properly taxable to the husband or whether it may be *301 divided between the husband, the wife, and fifteen trusts for the benefit of their three children. Petitioners contend that the wife, Florence R. Miller, invested her independent capital in the business, that she contributed substantially to the management and control of the business, and that she performed other vital services. They contend that the arrangement met all the requirements for a valid family partnership, as set forth in Commissioner v. Tower, 327 U.S. 280. They also contend that the trusts for the benefit of the three children were partners because the trustees took an active part in the management and control of the business and also contributed capital to the business. The respondent denies these contentions. In Commissioner v. Tower, supra, the Supreme Court said: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated *302 by 26 U.S.C. §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." The funds which the petitioner's wife claims to have contributed to the business all originated with her husband either as direct gifts from him or as diversions of income from the business. There is no evidence that she invested in the business at any time any capital originating with her. Transfers to the wife of a partial interest in the husband's business are not investments of new capital. Commissioner v. Tower, supra, and Lusthaus v. Commissioner, 327 U.S. 293. There is evidence that the petitioner's wife did take an interest in the business and that she made occasional visits to the stores for business purposes, but we are convinced that her interest in the business was primarily that of a wife who desired to help her husband when *303 she could and that the services which she contributed were only of a casual nature, rendered when it was convenient for her to do so. A substantial part of the money allocated to Mrs. Miller on the books of the business remained in the business, and the money actually paid over to her from the business was largely spent for the things which a wife and mother would be expected to buy for personal and household needs for herself and her family. There is no indication of any real shift of economic interests in the earnings of the business from the petitioner to his wife. As the real owner of the business, the petitioner was responsible for all major decisions of policy and was concerned primarily with financing the business. He was free to accept and did accept ideas and suggestions from his wife as well as his employees. His wife's contributions of ideas and services, while undoubtedly of some value to the business, were not of the nature or of sufficient importance to constitute her a partner in the business. We think that the rule that the transfer to a wife of a partial interest in the husband's business does not constitute her a partner also applies to transfers of partial *304 interests to trusts for their children. Eisenberg v. Commissioner, 161 Fed. (2d) 506, certiorari denied, 332 U.S. 767; Dawson v. Commissioner, 163 Fed. (2d) 664. The petitioner here transferred substantial interests in the business to his wife and to himself as trustees for his children and then continued to carry on the business as before. No new capital came into the business as a result of these transfers. The capital of the business was merely redistributed. We think it is clear that the trusts established by petitioner and his wife did not make substantial contributions to the control and management of the business and that they did not perform other vital services. The petitioner and his wife had broad powers as trustees to control the management and investment of the trust funds "as though they were sole owners of such interest." The petitioner continued to conduct the business as before, merely attributing his efforts to himself and his wife as individuals and as trustees. The trusts created by the petitioner's wife for the children were created from interests given to her by her husband and, for tax purposes, must also be attributed *305 to him. Kohl v. Commissioner, 170 Fed. (2d) 531 (C.C.A., 8th Cir.). Although we hold that there was no partnership between the petitioner and his wife and the trusts which they created for their children, the three trusts created by William R. Miller are entitled to a different treatment. His intention to make gifts in trust to his grandchildren of interests in the business was clear, and the $15,000 of his personal funds put into the business did constitute an investment of outside capital. We conclude that he intended to buy, and did buy, a partnership interest in the amount of $5,000 for each of the three children. As the income of this business is essentially due to the investment of capital and not to personal services, we hold that each of these three trusts is entitled to a share in the earnings of the business, amounting to 5/135 of the total earnings for the year 1941. Some recent cases have upheld family partnerships for tax purposes with slight contributions of capital and services by the alleged family partners where it was found that the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits *306 or losses or both. However, in each of those cases there was a real need for the family partner in the firm and a real intention that he be an actual partner in the firm. This case is clearly distinguishable on its facts from those cases because here the petitioner had no need or obligation to make his wife and children partners in his business, and there was no benefit to the business in making them partners, other than the capital contributions made by William R. Miller. After purporting to make the members of his family partners in his business, the petitioner continued to operate and dominate the business as before. Another question in this case is whether the respondent correctly disallowed a deduction in the amount of $816.03, claimed by the petitioner in 1941 as a loss in connection with the operation of a kennel. There is some evidence that the kennel was operated as a profit-making business venture and not as a hobby, as contended by respondent. However, we have no evidence before us to support the deduction claimed in the return. We cannot determine what amount, if any, represented petitioner's actual loss. We do not decide whether the kennel was operated as a business *307 or a hobby. In the absence of proof to support the deduction, we must sustain the respondent's disallowance of it. Decision will be entered under Rule 50.