S. E. Boozer v. Commissioner.
S. Boozer v. Commissioner
Docket No. 9297.
United States Tax Court
1947 Tax Ct. Memo LEXIS 99; 6 T.C.M. (CCH) 1021; T.C.M. (RIA) 47248; August 28, 1947
John W. Lapsley, Esq., 100 Church St., Selma, Ala., for the petitioner. John R. Stivers, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The taxes in controversy are income taxes for the taxable years ended December 31, 1940, and December 31, 1941. Petitioner's income tax returns for these periods were filed with the collector of internal revenue at Birmingham, Ala. Petitioner sold certain real estate in 1940 and reported the gain as capital gain. Respondent has determined that this gain should be treated as ordinary income and has determined a deficiency of $362.86 with respect to petitioner's 1940 return all of which is here in issue. The deficiency determined by respondent with respect to 1941 is $29,866.39. *100 Petitioner disputes such part of this deficiency for 1941 as arises by reason of respondent's action in determining that the income received by petitioner's wife and sister from a partnership of which he and they were members should be included in petitioner's taxable income for that year. Findings of Fact Petitioner, S. E. Boozer, is an individual residing at Anniston, Alabama. Starting in about 1934 or 1935 petitioner and T. C. King became associated in business operations which involved the building of Civilian Conservation Corps camps. Prior to that time petitioner had been engaged in the lumber business. This association was intermittent in nature over a period of several years and consisted of engaging jointly in isolated construction contracts. King performed the actual operating services in connection with the contracts and petitioner participated by assisting King in obtaining the performance bonds required for these contracts. Petitioner's excellent credit standing and financial position made it possible for them to obtain these performance bonds. Petitioner did not participate in all of the contracts handled by King, but only in those which were beyond the financial *101 ability of King to handle. Petitioner shared equally in the profits of the contracts in which he participated. Sometime in 1940 petitioner and King formed a partnership under the name of King & Boozer for the purpose of engaging in the manufacture of prefabricated portable houses and fabricating lumber. Up to that time King had individually owned the manufacturing plant and its equipment and it was agreed then that petitioner would purchase part of the physical assets from King. Petitioner contributed some $3,000 worth of equipment to the partnership and after various payments or adjustments between the two individuals, King and petitioner owned equal interests in all of the assets of the business and shared equally in the profits and losses. On December 31, 1940, these assets had a value of $23,000. For convenience, this partnership will be hereinafter referred to as the "old partnership". This old partnership was managed by King, who devoted his entire time thereto and was paid a salary of $500 per month. In the fall of 1940 the contracts which the old partnership had were about completed. At this time petitioner advised King that he did not desire to continue with the partnership. *102 Petitioner had become Probate Judge of Calhoun County, Alabama, and had several other corporations in which he was interested. Furthermore, he wanted to slow down a bit in his activities. King insisted that petitioner continue in the business and after much discussion petitioner finally agreed to remain interested in the Business of King & Boozer provided that it was conducted in the form of a corporation. All of petitioner's other business interests were in corporate form and petitioner did not want to be subject to the personal liability resulting from the partnership. In 1937 petitioner had been active in the organization of a corporation known as the Woodstock Sand and Mineral Co. (hereinafter referred to as Woodstock), which had total authorized capital stock of $15,000 divided into 150 shares having a par value of $100 each. At the time of Woodstock's organization, petitioner gave 25 shares of that corporation's stock to his wife, Sarah F. Boozer, and 25 shares to his sister, S. E. Weaver, who was a married woman with two children. The stock certificates were made out in their respective names and were delivered to them. S. E. Weaver kept her certificate at her home in her *103 possession. Sarah F. Boozer's certificate was placed with other securities owned by her and kept in a safe in petitioner's office. Petitioner did not have any agreement or understanding with his wife or sister that they were ever to return or transfer back to him the shares of Woodstock stock which he had given to them. Petitioner himself owned 25 shares of Woodstock stock. The remaining 75 shares, or 50% of the authorized shares, were owned by members of another family named DeHart. At about the time that the incorporation of King & Boozer was discussed, petitioner was desirous of obtaining ownership of all of the Woodstock shares because he had an opportunity of selling Woodstock to other interests at a very substantial profit if he had complete control of it. Petitioner, therefore, offered to trade with his wife and sister shares in the King-Boozer corporation, which was to be organized, for their respective holdings in Woodstock. The two women agreed to this exchange and transferred their respective shares to him on January 1, 1941. The members of the DeHart family were unwilling to sell their shares to petitioner, and finally, on November 18, 1941, it was agreed at a special *104 meeting of Woodstock stockholders that the capitalization of Woodstock would be reduced to 50 shares of $100 par value each and that certain assets of the corporation would be distributed to the then shareholders which consisted of petitioner and the members of the DeHart family. Twenty-three shares of the new Woodstock stock were then issued to petitioner, and at his direction, and as a gift from him, one share each was issued to his wife and sister, respectively. Petitioner then sold his Woodstock shares for $25,000 and the assets which he received from Woodstock for $6,500. In all, petitioner got $31,500 upon the disposition of his stock and Woodstock assets, and realized substantial gain over his original investment in that company. The record does not reveal what disposition was made of the Woodstock shares which petitioner's wife and sister, respectively, received in November of 1941, or the date when petitioner actually disposed of his Woodstock shares and the assets which he had received from it. On January 10, 1941, a certificate of incorporation for the King-Boozer Co., Inc., was executed. The certificate provided for a capital structure consisting of 150 shares of common *105 stock of $100 par value each. The incorporators and number of shares subscribed for by each were: Shares
T. C. King
70
Mrs. T. C. King
5
S. E. Boozer (the petitioner)
70
Mrs. S. E. Boozer (petitioner's wife)
5 Petitioner contemplated issuing shares to his sister out of his own holdings. Even after the preparation of the incorporation papers, King continued to object vigorously to the corporate form for the enterprise. He felt that under its capitalization the corporation would be hampered in its operations and would be unable to obtain performance bonds. Petitioner finally, and reluctantly, agreed to continue the business as a partnership. The corporation, as such, never did any business and no stock was ever issued by it. A partnership agreement was then executed which was dated back to January 1, 1941, and provided: "We, the undersigned T. C. King, S. E. Boozer, Sadie C. King, Sarah F. Boozer, and Mrs. S. E. Weaver, hereby associate ourselves together as partners doing business under the firm name and style of King and Boozer, and it is mutually agreed between us as follows: "Mrs. S. E. Weaver and Mrs. Sarah F. Boozer hereby contribute the sum of Two *106 thousand, Five hundred thirty & No/100 ($2,530.00) Dollars, each, to the partnership. Mrs. Sadie C. King and T. C. King each contribute the sum of Five thousand, seven hundred fifty & No/100 ($5,750.00) Dollars to the said partnership. S. E. Boozer contributes the sum of Six thousand, four hundred forty & No/100 ($6,400.00) Dollars to the partnership. "It is further understood and agreed that said business shall be conducted in all respects as if the said S. E. Boozer and T. C. King own the same outright, and the said Mrs. S. E. Weaver, Sarah F. Boozer, and Sadie C. King are to be silent partners in said firm. "Said partners shall be engaged in the business of manufacturing lumber and metal products, the sale of such products and other complimentary lines of business as may be related to the above type of business. "The said Mrs. S. E. Weaver, Sarah F. Boozer, and Sadie C. King being desirous of remaining silent partners in said business, authorize the said S. E. Boozer and T. C. King to take and hold title to any and all property belonging to said partnership in their own name for our use and benefit, and to make such conveyances of such property as may be necessary without *107 our joining in the same. "The profits and losses of said business shall be computed as of the close of business December 31, 1941, and on December 31st each year thereafter during the continuance of this partnership. "It is further agreed that T. C. King shall draw a salary of One thousand and No/100 ($1,000.00) Dollars per month, as General Manager of said partnership." For convenience, the partnership created by this agreement will hereinafter be referred to as the "new partnership". Petitioner's wife and sister received their interests in this partnership in lieu of the stock in the proposed corporation which petitioner had agreed to transfer to them. As of January 1, 1941, entries were made on the books of the partnership to reflect the capital contributions of the respective partners. These entries were made in capital accounts set up for each of the partners. The aggregate of these accounts amounted to $23,000, of which $2,530, or 11%, was credited to Mrs. S. E. Weaver's account, $2,530, or 11%, in the account of petitioner's wife, $6,440, or 28%, in petitioner's account, and $5,750, or 25%, each in the respective accounts of King and King's wife. As of January 1, 1941, the *108 old partnership had some $51,000 in accounts receivable, which were entered on the books of the new partnership as accounts receivable with offsetting entries of accounts payable to T. C. King and the petitioner. These accounts receivable of the old partnership were not contributed to the new organization by King and petitioner, and upon collection of these accounts, the sums obtained were paid to King and petitioner. On January 18, 1941, King and his wife conveyed to King-Boozer Co., Inc., all their right, title and interest in certain real and personal property owned by King under the name King Metal Products Co., and which property had been used by the old partnership in its business, but which King had never formally conveyed to it. On February 1, 1941, King-Boozer Co., Inc., by T. C. King, president, conveyed all its right, title and interest in the same property to "T. C. King and Simon Elbert Boozer" the latter being the petitioner here. After the new partnership was organized it did not have much business during the early months of 1941, but in about May or June of that year a contract was obtained from the Army for prefabricated portable buildings upon which contract a *109 very substantial profit was realized. This contract was signed by King on behalf of the partnership and all work under the contract was about completed by September 15, 1941. Between February 1, and August 30, 1941, the partnership borrowed $195,000 from various banks for operating purposes. The new partnership obtained a number of performance bonds which were signed by King and the petitioner. Other members of the partnership were not required to sign these bonds. The record does not reveal that any persons, banks, companies or other organizations with which the new partnership did business were given any notice of the change from the old to the new partnership. Petitioner took no active part in the management of the old or new partnerships and did not regularly devote any time thereto, except to advise King, the managing partner, with respect to the purchase of lumber and to join in the execution of performance bonds for contracts obtained by the old or new partnerships. On January 1, 1941, petioner had a net worth of not less than $200,000. King was paid a salary of $1,000 per month for his services in managing the business of the new partnership. No salary was paid to any other *110 member of this partnership, and no personal services were required to be rendered or were rendered by any other member. King was entirely indifferent as to whether or not petitioner's wife and sister were included in the partnership. Petitioner's wife had a substantial estate of her own which amounted to not less than $50,000 on January 1, 1941. Her estate included moneys and property which she had received from her parents and gifts which her husband had given to her. She owned an apartment house and several houses from which she received rents and had some other investments. She maintained a joint account with petitioner in the First National Bank of Anniston, Alabama, which account was used only for funds belonging to her and which were to be invested or loaned out on mortgages. The proceeds from the sale of her securities and moneys received upon the payment of loans were deposited into this account. Checks drawn on this account had to be signed by both petitioner and his wife. Petitioner advised his wife with respect to mortgage loans and investments to be made by her, but did not control her activities or receive any part of the proceeds realized therefrom. She also had a separate *111 bank account in which she deposited rents collected by her. A separate set of books was kept in petitioner's office with respect to his wife's business transactions. These books were maintained by persons in petitioner's employ and were kept entirely separate from petitioner's books. Mortgages, notes and other documents relating to her transactions were kept in a steel cabinet in petitioner's office, but were kept separately from papers pertaining to petitioner's own transactions. Mrs. S. E. Weaver had a net worth of not less than $25,000 at the time the new partnership came into being. On September 15, 1941, after the principal contract held by the new partnership had been about completed, petitioner and his wife and sister sold and conveyed their respective interests in the partnership, including all of their interests in the real and personal property then owned by the partnership, including contracts and accounts receivable, to T. C. King and his wife. The total purchase price paid by the purchasers was $106,500, divided between the sellers as follows: "To S. E. Boozer, $6,440 capital investment return, and $53,200 profit on capital investment. "To Mrs. Sarah Foster Boozer, *112 $2,530 for capital investment return and $20,900 profit on capital investment. "To Mrs. S. E. Weaver, $2,530 for capital investment return, and $20,900 profit on capital investment." The agreement whereby petitioner and his wife and sister made this conveyance, recited that the parties agreed that as of the date of the agreement the net profit of the partnership was $190,135. At no time during the partnership period were any of the partnership profits distributed. The sums of $53,200, $20,900 and $20,900 paid to petitioner and his wife and sister and aggregating $95,000, which were designated in the agreement as "profit on capital investment" were distributions of partnership profits to the recipients in proportion to their respective interests in the partnership. The partnership return of income for the calendar year 1941 recited that the net income of the new partnership for that year amounted to $181,621.60, and that petitioner's distributive share thereof was $48,672.98, and the respective shares of his wife and sister were $19,065.91 each. Taxpayer made a separate Federal income tax return for the year 1941 in which he stated that his income from King & Boozer amounted *113 to $48,672.98, less $1,186.95, or a net of $47,486.03. The deduction of $1,186.95 was for legal and other expenses incident to the partnership. In her separate income tax return for 1941, petitioner's wife reported that she had received $19,065.91 from the partnership. Petitioner's sister also reported the sum of $19,065.91 as income from the partnership in her 1941 return. Notice of the dissolution of the new partnership was published in an Anniston, Ala., newspaper on September 30, 1941, and two subsequent dates. The moneys which petitioner's wife received upon the sale of her interest in the partnership on September 15, 1941, were deposited in the joint bank account which she maintained with her husband and subsequently used in the making of mortgage loans in her name. Petitioner handled the sale of her interest in the partnership to King and his wife, but did not receive any part of the proceeds. After petitioner's sister received the proceeds from the sale of her partnership interest she deposited them in her bank account on which account she then drew a number of checks for personal purposes. Petitioner did not receive any part of these proceeds. Respondent has determined *114 that petitioner is taxable upon one-half of the net distributable income of $181,621.60 of the new partnership in the year 1941. Petitioner's wife and sister, respectively, were bona fide members of the new partnership during the taxable year 1941. In his individual income tax return for the year 1940 petitioner stated that his principal occupation, or profession, was "real estate". In that year he sold three pieces of property and realized gain of $950 on one piece and $500 on another. He suffered a loss of $130.52 on the third piece. His net gain on these three transactions was $1,319.48, of which he included one-half, or $659.74, as a long-term capital gain in his 1940 tax return. Petitioner has built and sold a few houses and had an interest in a land company. The properties sold by him in 1940 were not properties owned by the land company and did not involve the sale of any property occupied by him as a residence. Petitioner did not have a license as a real estate dealer. Respondent has determined a deficiency in petitioner's 1940 tax return in the amount of $362.86. This deficiency results from the fact that respondent has increased petitioner's 1940 taxable income by the *115 sum of $659.74 on the ground that petitioner was engaged in the real estate business in 1940, and that the full amount of gain from the sale of the three real estate parcels is includible in petitioner's gross income for that year. Opinion KERN, Judge: Two questions are presented for consideration. The first presents a so-called family-partnership problem with respect to petitioner's 1941 income, and since this is the more difficult question, it will be disposed of first. Respondent has determined that under section 22 (a) of the Internal Revenue Code petitioner is taxable on one-half of the entire net distributable income in 1941 of a partnership in which petitioner and members of his family had a one-half interest. Respondent urges that the partnership lacked reality insofar as it purported to include as partners the members of petitioner's family, i.e., his wife and sister. As between petitioner and his wife and sister, urges the respondent, the alleged partnership was nothing more than a method of reallocating family income. It is now a well-established rule that where an individual enters into a partnership arrangement with close members of his family *116 group, and it appears from the facts that the members of the family group made no investment of capital originating with them, that they had no voice in the management or control of the business, and that they contributed no vital services, these circumstances will justify a conclusion that a partnership between them does not, in reality, exist and will not be recognized as such for the purposes of the Federal income tax. John G. Scherf, 7 T.C. 346, and authorities therein cited. See also W. A. Belcher, 7 T.C. 182, aff'd. 162 Fed. (2d) 974 (C.C.A. 5, July 2, 1947), and Edward P. Fletcher, 7 T.C. 1186. Stated in a converse form the proposition would be that where the members of the family group make an investment in the partnership of capital originating with them, or where they contribute vital services with a voice in the management a conclusion will be justified that a partnership, in reality, does exist. The primary question in the instant case is whether petitioner's wife and sister contributed capital originating with them to the partnership enterprise. The case is unusual in that it does not involve a gift from the husband *117 or brother, contemporaneous with and incident to the formation of the partnership, of the capital invested in the socalled partnership by the wife or sister. The evidence here clearly shows, and respondent does not challenge, the fact that in 1937 petitioner made complete and valid gifts of stock in the Woodstock Land and Mineral Co., to his wife and sister. Each of the two women received shares of this stock which she held entirely as her own with no obligation to return the stock to petitioner or to share any profits therefrom with him. Late in 1940 petitioner had the opportunity of selling the stock of Woodstock or its assets at a very substantial profit if he could get his hands on all of the stock of that corporation. This occurred at about the time when he thought that he had persuaded King that King & Boozer should be incorporated. Acting in good faith he agreed with his wife and sister that if they, respectively, would transfer their Woodstock shares to him, he would transfer to each of them equivalent shares in the King & Boo0er corporation which was to be formed. If this arrangement had been carried out no question would have arisen. The change in plans which resulted in *118 the abandonment of the corporate form of the proposed new business enterprise was not of petitioner's making and came about only after vigorous objection on his part. We are not here, therefore, confronted with a situation where the arrangement for family participation in a partnership was made for the express purpose of reducing taxes and as an incident to that arrangement a purported gift of an interest in the partnership was made by the husband to the wife. Cf. Commissioner v. Tower, 327 U.S. 280. After it was decided to continue the business as a partnership petitioner could not transfer corporate stock to his wife and sister pursuant to his agreement. He, therefore, transferred to them in lieu of such stock, and with their consent, portions of his partnership interest equal in value to the stock which he had obligated himself to transfer to them, and at least equal in value to Woodstock shares which he had received from them. In effect, petitioner caused the partnership interests to be transferred to his wife and sister, respectively, for good and valid consideration and for full value even though the consideration had been received by him before the transfers. It *119 is apparent, therefore, that there is no element of gift involved in the transfers of interests in King & Boozer to petitioner's wife and sister. We also think it clear that each of the women invested her own capital, which was capital originating with her within the meaning of Commissioner v. Tower, supra. As pointed out by the Supreme Court in the Tower case "if she [the wife] either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner" within the meaning of the Internal Revenue Code. (Italics supplied.) The Supreme Court made it clear that if the wife's participation either met any one or all of the tests enunciated by it, that she might be a partner. Taking all of the circumstances of the partnership here before us into consideration, as suggested by the Supreme Court in Commissioner v. Tower, we conclude that the partnership was real within the meaning of the Federal revenue laws and that the respondent erred in taxing to petitioner one-half of the entire net distributable income of the partnership which *120 existed in 1941. We find no basis here for allowing the income received by petitioner and his wife and sister in the manner suggested in Claire L. Canfield, 7 T.C. 944. Petitioner himself contributed little in the way of services to the partnership. The actual management was largely in the hands of King who received a salary. As between petitioner, his wife and sister we can not say that any substantial part of the profits received by the wife and sister were due to the personal services of petitioner rather than to their own capital contributions. On brief, petitioner contends that the income or gain received by taxpayer, and by his wife and sister, was from the sale of their interests in the new partnership and constituted gains from the sale of long-term capital assets rather than ordinary income. Petitioner's brief points out that each of them erred in treating this income or gain as ordinary income in their respective income tax returns for 1941. However, since this point was not raised in the pleadings we can not consider it. The second question for consideration is whether respondent erred in including the full amount of petitioner's gain from the sale of *121 three parcels of real estate in 1940 in petitioner's 1940 taxable income. Petitioner contends that his gain in 1940 from the sale of real estate involved the sale of capital assets and that respondent erred in treating this gain as ordinary income. All of the evidence which petitioner offered on this point has been set forth in our findings of fact. We are unable to conclude from the evidence that respondent erred in his determination that petitioner was engaged in the real estate business in 1940, which determination was in accord with petitioner's own characterization of his principal business as stated in his 1940 return. Decision will be entered under Rule 50.